THOMAS C. YEARLEY, Executor of THOMAS B. COCKEY, and CHARLES T. COCKEY *vs.* JOSHUA F. COCKEY JR., administrator d. b. n. of MARY A. COCKEY.

*Administration account—Final Settlement—Acquiescence— Lapse of Time.*

M. A. C. died in 1860, intestate, leaving her husband, one sister, and four brothers, but no children, surviving her. She left certain real and personal property. Letters of administration were granted on her personal estate to her husband, who filed an inventory of part of such estate, but died before the estate was settled. After his death, letters testamentary were granted upon his estate to T. C. Y. who as executor, on the 7th of April, 1869, settled an account in the estate of M. A. C. in the Orphans' Court, and in that account charged his testator, the administrator of M. A. C. with the amount of the inventory previously filed by him, and after taking credit for sundry small items of costs, obtained a further credit for the " rest and residue of decedent's personal estate retained by this account-ant's testator, as husband and sole heir-at-law of deceased." Sub-sequently T. C. Y. as executor, collected a mortgage held by M. A. C. at the time of her death, surrendered the mortgage notes paid to him, released the mortgage, and carried the amount thus collected into the personal estate of his testator, which he shortly thereafter settled and distributed, in the Orphans' Court, according to his testator's will, to the legatee thereunder. The brothers and sister of M. A. C. had full knowledge of the settlement of the account of the 7th of April, 1869, and of the distribution of the estate of the testator, and the same remained unchallenged and unquestioned by any of them during their lives. But on the 2nd of March, 1887, after the death of those brothers and of the sister, and nearly eighteen years after the settlement by T. C. Y. in the Orphans' Court, of the aforementioned account in the estate of M. A. C. a nephew of M. A. C. who had been appointed in February of that year, adminis-trator *de bonis non* of her estate, filed a petition in the Orphans' Court praying that the account passed on the 7th of April, 1869, might be opened on the ground that the testator in his life-time had not reduced into possession certain personal property of his wife,

Yearley, Ex'r *vs.* Cockey, Adm'r.

and that consequently the same had been erroneously included in his estate by his executor. HELD:

That as the administration account in the estate of M. A. C. settled on the 7th of April, 1869, and the distribution of the estate of the testator, were thoroughly known to, and acquiesced in by, the next of kin during the life-time of said testator, the claim now presented for the first time, after the lapse of so many years, by some of their descendants, cannot be entertained.

APPEAL from the Orphans' Court of Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*D. G. McIntosh,* and *S. Teackle Wallis,* for the appellants.

*Robert Baldwin,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

In eighteen hundred and sixty, Mary A. Cockey died intestate leaving her husband, Thomas B. Cockey, one sister and four brothers, but no children, surviving her. At the time of her death she owned real and personal property. Letters of administration were granted upon her personal estate on April the third, eighteen hundred and sixty-seven to her husband, who, on the ninth of that month returned to and filed in the Orphans' Court of Baltimore County, an inventory of a part of the personal property of his deceased wife. That inventory embraced the following items: one share of Baltimore City Stock, one redeemable sub-ground rent, and two hundred shares of the capital stock of the Reisterstown Turnpike Company. On the seventeenth of November, eighteen hundred and fifty-nine, Benjamin Horn and wife executed to Mary A.

Cockey a mortgage upon real estate situated in Baltimore City, to secure the payment, in ten years from that date, of a promissory note for four thousand dollars, and the payment of twenty other promissory notes of the like date for the semi-annual interest on the principal sum. After her death this mortgage and these mortgage notes passed into the actual possession of her husband, who collected the interest notes as they matured until the time of his death, which occurred in eighteen hundred and sixty-eight before the mortgage fell due. Mr. Cockey made no settlement or distribution of his wife's estate in the Orphans' Court, and did nothing further respecting it than to file the inventory already alluded to. During his life he collected the interest on the shares of Baltimore City Stock, and the dividends on the turnpike stock, but took no steps to have the certificates transferred to himself, suffering them to remain standing in the name of his wife. After his death letters testamentary were granted upon his estate by the Orphans' Court of Baltimore City to the appellant, Thomas C. Yearley, the executor named in his will. On the seventh of April, eighteen hundred and sixty-nine, Mr. Yearley as executor of Thomas B. Cockey settled an account in the estate of Mary A. Cockey in the Orphans' Court of Baltimore County ; and in that account charged his testator, the administrator of Mrs. Cockey with the amount of the inventory previously filed by Mr. Cockey, and after taking credit for sundry small items of costs, obtained a further credit for the " rest and residue of decedent's personal estate retained by this accountant's testator, as husband and sole heir-at-law of deceased." Neither this inventory nor this account included the mortgage or the mortgage notes held by Mrs. Cockey at the time of her death. In November eighteen hundred and sixty-nine, Mr. Yearley as executor of Thomas B. Cockey, collected the Horn mortgage, surrendered the mortgage notes paid to him, released the mortgage and carried the amount

thus collected into the personal estate of Thomas B. Cockey, which he shortly thereafter settled and distributed in the Orphans' Court of Baltimore City, according to his testator's will to Charles T. Cockey, the legatee thereunder. Charles T. Cockey since then has received the interest and dividends on the city and the turnpike stocks, though the former still stands in the name of Mary A. Cockey, the latter having been transferred by Mr. Yearley to Charles T. Cockey, along with other stock of the same company which stood in the name of Thomas B. Cockey. The leasehold property was disposed of by Mr. Cockey in his life-time.

The matter stood thus, unchallenged and unquestioned by any of the brothers or by the sister of Mary A. Cockey during their lives. But on the second of March, eighteen hundred and eighty-seven, after the death of these brothers and of this sister, and nearly eighteen years after the settlement by Mr. Yearley in the Orphans' Court of Baltimore County of the account referred to, in the estate of Mary A. Cockey, the appellee, Joshua F. Cockey, who had been appointed on the sixteenth of February in that year, administrator *de bonis non* of Mary A. Cockey's estate, presented to the Orphans' Court of Baltimore County a petition which was followed on the thirtieth of March succeeding by an amended petition, claiming that these stocks and the mortgage notes had never been reduced into possession by Thomas B. Cockey in his life-time, and that they were consequently erroneously included by his executor in his estate; and praying that the account so passed on the seventh of April, eighteen hundred and sixty-nine might be opened, and that Mr. Yearley as executor might be required to deliver to the appellee, the administrator *de bonis non,* all bonds, notes, accounts and certificates of debt which said deceased administrator, Thomas B. Cockey, may have taken, &c.

To this petition an answer was filed by Mr. Yearley, wherein he avers that the full and exclusive ownership in the property in question was asserted by Mr. Cockey, and that the distribution of Mrs. Cockey's personal estate was thoroughly known to and acquiesced in by the parties interested. Charles T. Cockey also answered. The Orphans' Court passed an order granting the prayer of the petition and from that order this appeal has been taken.

As the mortgage from Horn to Mrs. Cockey did not mature during the life-time of Mr. Cockey, it was of course impossible for him to have enforced payment of it: and it has been, therefore, urged that by reason of this fact there could not have possibly been and really was not a reduction of it into possession on his part. It has been further insisted that there was not in fact a reduction by him into possession of the city and turnpike stocks. However this may be, and whether the acts relied on as evidencing a technical reduction of these *choses in action* into the possession of the husband are consistent solely with that theory, or are equally compatible with the mere enjoyment by Mr. Cockey of a life estate in his wife's personal property, there is, in the view we have taken of this case, an objection, at its very threshold, which entirely precludes an affirmance of the order of the Orphans' Court.

The administration account which has been assailed was passed, as we have stated, in the Orphans' Court of Baltimore County on the seventh of April, eighteen hundred and sixty-nine, whilst the four brothers and the one sister of Mary A. Cockey were all living. It is clearly established by the evidence in the record, that these only next of kin of Mrs. Cockey had full knowledge of that settlement, and of the distribution of the estate of Thomas B. Cockey; and it is not disputed that "his ownership of the personal property referred to was never questioned during the life-time of the said Thomas B. Cockey by any of" these next

of kin. This was fully acquiesced in by them all. After the lapse of so many years and after the death of these brothers and this sister, the claim now made by some of their descendants is for the first time presented. Can it be entertained under these circumstances?

A matter once settled without any imputation of fraud, and deliberately acquiesced in by all the parties in interest for so long a period of time ought not to be lightly disturbed.

To tolerate it would be subversive of a most salutary as well as a fundamental principle and the firmly settled policy of the law, "as the lapse of time carries with it the life and the memory of witnesses, the muniments of evidence and the other means of judicial proof." As has been said by the Supreme Court of the United States in *Lansdale vs. Smith*, 106 *U. S.*, 394, "the peace of society and the security of property demand that the presumption of right arising from a great lapse of time, without the assertion of an adverse claim, should not be disturbed. In such cases sound discretion requires that the Court should withhold relief." A contrary doctrine "would violate the best principles of public policy and jurisprudence." *Hawkins vs. Chapman*, 36 *Md.*, 83. We can with propriety apply to this case the language of the Court of Appeals of this State in *Ridenour vs. Keller*, 2 *Gill*, 145, a somewhat analagous cause, viz., "Our conclusion, drawn from these facts, is placed beyond a doubt by the lapse of time when this distribution was made, before any attempt is made to question its integrity. This transaction slept for more than sixteen years, in as profound silence as its author; and, when an effort is made, to drag it up from its long repose, it is not by any charge of deceit, or unfairness, or fraud, but that the letter of the law had not been fully observed, performed, and kept."

If Mrs. Cockey's brothers and sister, who, as it is conclusively show by the evidence in the record, assented to the settlements and distributions in her estate and in that of

her husband, and who, with full knowledge, acquiesced therein, were living and had initiated the proceedings now before us, can it be doubted, in view of the principles just invoked, that they would be denied the relief sought here; and that, too, without reference to the question whether there was or was not error in the settlements as made? In a Court of equity their acquiescence and their laches would be a bar to any relief. There is no reason, that we know of, for the application of a different doctrine when the proceedings originate and are prosecuted in the Orphans' Court instead of in a Court of equity. The same policy which dictates a denial, in one tribunal, of relief to those who have slept for so long a period upon their rights, with equal force applies to like proceedings in the other. The policy and the reason of the law in this respect are the same in both jurisdictions. We hold then that these next of kin would have been precluded from opening this settlement because of their acquiescence in it and because of the long delay in inaugurating proceedings to accomplish that end. Are *their* descendants, now that these next of kin are dead, in any better position to assail this account than were those under whom they claim? It is not perceived that they have, though securing the appointment of an administrator *de bonis non,* acquired, or that they possess, any superior rights. They are visited with all the consequences of the acquiescence and the laches of those under whom they claim. Whatever right they have succeeded to are subordinate to these consequences.

Without considering the other questions discussed, we are of opinion that there was error in passing the order appealed from, because of the long acquiescence and delay on the part of the next of kin of Mary A. Cockey. We will therefore reverse that order and dismiss the petition.

*Order reversed,*
*petition dismissed.*