# CHARLESTON.

GARTLAND, MOWRIS *et al.* v. HICKMAN.

Submitted June 6, 1904. Decided October 25, 1904.

1. OIL LEASE—*Freehold.*

The owner of land executes a lease thereon for oil and gas; purposes, by which it is agreed that the lessees shall have the privilege, at any time, to remove therefrom all machinery and fixtures placed on said premises. Under this lease, the lessees, and their assignees, for the purpose of exploring for oil and gas placed on the land an engine, wooden oil well rig, wooden oil tanks, casing, pipes, rubber belt, and other appliances of like character, necessary for the prosecution of that work. Afterwards the lease was forfeited and terminated for the non-payment of rental. *Held*, that said machinery and fixtures did not become parts of the freehold, and that said lessees, or the owners of the machinery and fixtures had a reasonable time after the termination of said lease, in which to remove said property from the land. (p. 87).

2. OIL LEASE—*Limitation.*

What is a reasonable time for the removal is to be determined from all the facts and circumstances of the case. (p. 88).

Error to Circuit Court, Harrison County.

Action by Thomas Gartlan and others against Willie Hickman.  Judgment for plaintiffs, and defendant brings error.

*Affirmed.*

EDWARD G. SMITH, for plaintiff in error.

JACKSON & PATTON and JOHN BASSEL for defendants in error.

MILLER, JUDGE:

Miranda A. Hickman and Willie Hickman, her husband, executed to John F. Phillips and J. Perry Thompson, a lease, bearing date on the 29th day of May, 1901, on a tract of one hundred and twelve and one-half acres of land in Harrison county, for oil and gas purposes.  By successive assignments of the lease, W. S. Mowris, Thomas Gartlan and the Southern Oil Company acquired an interest therein.  The lease stipulates, among other things, that the parties of the first part "do grant, demise, lease and let unto the parties of the second part, their heirs, executors, administrators or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines, and of building tanks, stations and structures thereon to take care of said products, all that certain tract of land," etc., describing it. In another clause thereof, "it is agreed that this lease shall remain in force for the term of five years from this date, (the date of the lease), and as long thereafter as oil or gas, or either of them, is produced therefrom by the said parties of the second part, their successors and assigns. * * * * Provided, however, that this lease shall become null and void, and all rights herein shall cease and determine unless a well shall be completed on the said premises within ninety days from the date hereof, or unless the lessees pay at the rate of $125.00 quarterly in advance for each additional three months such completion is delayed from the time above mentioned for the completion of such well until a well is completed; and it is agreed that the completion of such well shall be and operate as a full liquidation of all rentals under this provision during the ramainder of the term of this lease. * * *  It is agreed that the second parties shall have the privilege * * * at any time to remove all machinery and fixtures placed on the premises."

It is admitted by the parties to this action that Mowris, Gart-

lan and said Oil Company went upon the land, under the lease
and drilled one well for oil and gas, which was completed about
the middle of January, 1901, and shot by them, on the 13th day
of February of the same year; that the parties last mentioned
paid the rental under the lease on the 29th day of August, 1901,.
for the quarter ending on the 28th day of November, 1901, which
rental was accepted by Hickman and Mrs. Hickman, the then;
owners of the land; but no other rental provided for in the
lease appears to have ever been paid.

On the 31st day of December, 1901, said Willie Hickman com-
menced his suit in chancery in the circuit court of Harrison
county against Mowris, Gartlan, the Southern Oil Company,.
Phillips and Thompson; and on the 7th day of January, 1902,
presented his bill, to the judge of said court, in which he sets-
up said lease and the several assignments thereof, and filed
therewith copies of the same and in substance alleges therein:
that Mowris and the Oil Company, claiming to be equal owners
of the lease, had drilled one well on said land, marked on the
plat filed as "No. 1," which was completed by them about the·
middle of January, 1901; that it was afterwards shot and de--
clared by them to be a dry hole and not worth cleaning out;
that said lease had been abandoned by the said defendants, and.
active operations thereon for oil and gas continuously, discon-
tinued ever since the middle of January, 1901, until the 31st
day of December, 1901; that the defendants have paid no rental
on said land since the 29th day of August, 1901; that on the
31st day of December, last aforesaid, they again entered upon
said land with screw, circle, water barrels, bailer, stem and
cable; hauled the same to the well; and proceeded to lay pipe·
for the purpose of furnishing fuel to said well from another well
on a neighboring farm. The bill then charges that the said
lease and assignments thereof are null and void, and constitute·
and are a cloud upon plaintiff's title to said land, and prays that
said lease, and the several assignments thereof, be declared for-
feited and cancelled as such cloud; and that defendants, and
each of them, be restrained and enjoined from entering upon·
said land, and from doing any and all things under said lease,
or any of the assignments thereof.

The injunction was granted as prayed for; the bill was filed
at rules, and the cause regularly matured for hearing, and, on·

the 22d day of May, 1902, the court made and entered its decree therein in the words and figures following, to-wit: "This cause came on this day to be heard upon the plaintiff's bill and exhibits therewith filed, and was argued by counsel. Whereupon it appears to the court that this cause was regularly matured at rules and the summons duly served on all the defendants and the plaintiff's bill taken for confessed, and cause set for hearing at March rules, 1902; and it further appears to the court that the plaintiff is entitled to the relief prayed for in his bill, it is adjudged, ordered and decreed that the lease therein described as the Phillips and Thompson lease, bearing date on the 29th day of May, 1902, and all assignments thereof and contracts thereunder and a subsequent lease of the three acres around the buildings in said Phillips and Thompson lease reserved, are forfeited and constitute a cloud upon the plaintiiff's title to the land therein described and are hereby cancelled, and the said defendants are ordered to surrender to the plaintiff the said lease and all assignments thereof."

Hickman, on the 14th day of July, 1902, sent by registered mail, to the several persons to whom it is addressed copies of the following notice: "To Thomas Gartlan, The Southern Oil Company, a corporation, J. Perry Thompson, John F. Phillips and W. S. Mowris: You are hereby notified that the oil well rig, at well No. 1, casing and all fixtures and machinery of every kind or character, and all property now on my farm on Indian Run, in Harrison county, West Virginia, belong to me and are my property; and you are further notified not to remove the same or any part thereof; and you are still further notified not to trespass upon my said farm or any part thereof for any purpose whatever," which copies appear to have been received by them respectively, from the 14th to the 28th days of July, 1902. It is also proved that this notice was the first claim of ownership that Hickman had made to the property in controversy, and was the first knowledge that the defendants or any of them had of the determination of the said chancery cause, or of such claim.

On the 1st day of August, 1902, an action in detinue was commenced in the circuit court of Harrison county by said Gartlan, Mowris, The Southern Oil Company, Phillips and Thompson against Hickman for the recovery of sundry goods and chattels, to-wit: "2,777 ft. of 6 5-8-inch casing (National Tube

Works manufacture), value $1,041.73; 200 feet 10-inch casing (National Tube Works manufacture), of the value of $192.00; 1 12x12 Eureka Engine-Boiler Works of Oil City manufacture, of the value of $232.50; 1 wooden oil well rig, value $200.00; 1 250-barrel wooden oil tank, of the value of $30.00; 1 rubber belt 6x12, 95 feet long, of the value of $50.00; 1 6 5-8-inch T, cast iron, of the value of $3.32; 3 6 5-8-inch Ells, cast iron, of the value of $6.98; all of said property being of the value of $1,846.53, said property being in the possession of the said Willie Hickman, and $1,000.00 damages for the detention of the same," and being the machinery and fixtures placed by them on the leased premises, whereupon the affidavits and bond as required by law having been filed by the plaintiffs in the case, at the commencement of the action, the sheriff was directed to seize and take into his possession the property mentioned, which he did, and delivered the same to plaintiffs. A declaration having been filed, there was a trial of the action to a jury; a verdict in favor of plaintiffs for the property sued for; a motion by defendant to have said verdict set aside, which was by the court overruled; and a judgment that the plaintiffs should retain possession of the said property mentioned and described in the verdict of the jury, and that the plaintiffs should also recover their costs expended. Upon petiton of Hickman, a writ of error to said judgment was allowed by a judge of this Court. He complains that the court refused to set aside the verdict of the jury and grant to him a new trial of the action; that a certain instruction was given to the jury on motion of plaintiffs; and that certain other instructions were refused, all of which rulings of the court, he asserts, were and are erroneous and prejudicial to him.

In addition to the facts hereinbefore stated, the following agreed statement was read to the jury as evidence on the trial of said action:

"It is admitted by the parties that the plaintiffs placed the property in controversy upon the land of the defendant embraced in the lease of May 29th, 1900, for the purpose of drilling and operating for oil and gas, under the lease; that one well was drilled in by the plaintiffs and completed about the middle of January, and shot by the plaintiffs on the 13th of February, 1901. The plaintiffs paid the rental under the lease on the 29th

day of August, 1901, for the quarter ending November 28th, 1901, which rental was accepted by the then owners of the property, the defendant and his wife, Mrs. Miranda Hickman. The well in question was drilled to a depth of thirty-two hundred and eight feet, and the casing inserted to the proper depth, to-wit: about twenty-one hundred or twenty-two hundred feet. That a derrick was built over the well for the purpose of drilling, or runnig the drilling tools in the usual way and constructed in the usual manner, to the usual height, about eighty-two feet, and that iron tubing or casing was inserted in the will, which is described in the declaration. That the engine sued for was set or placed in an engine house and connected with the derrick with drilling tools in the usual way, and the tanks described in the declaration were set or placed about seventy-five feet from the derrick, or south of the well, for the purpose of receiving the oil. That the derrick is described in the declaration as one Wooden Oil-well Rig. The T's and L's were used for the purpose of connecting the well with the tank, in other words the piping leading from the tank to the well.

"That all the property sued for in the declaration was connected in the usual way and manner of connecting said property for the drilling and operating of the well, and was necessary for that purpose and used for that purpose. That shortly after the 28th day of November, 1901, the defendant posted notices in writing upon all the outer gates of the land embraced in the lease, notifying the plaintiffs or any one acting under them to keep off the property, and that the defendant claimed that the lease had been forfeited for the failure to pay rent. Neither the plaintiffs nor any of their agents at that time being on the property. That the same notice and claim were given verbally by the defendant to Clint Cothrop and other of the agents of the plaintiffs at the same time. That no rental was paid after the 28th of August, 1901, as before stated. That on the 31st day of December, 1901, the employes of the plaintiffs and by authority of the plaintiffs, after the notice aforesaid had been given, went upon said property, and by warrant sued out on the first day of January, 1902, were arrested as trespassers, taken before a justice of the peace, and the cause continued at the instance of the defendants in the warrant and before trial an injunction was granted in the chancery suit of Willie Hickman against Thomas

Gartlan and others, then pending in the circuit court of Harrison county, Thomas Gartlan and others were then not prosecuted further under said warrants, but the same were dismissed.

"That on the 13th day of February, 1901, the employes of the plaintiffs, by authority of the plaintiffs, went upon the land and versy was taken by the plaintiffs at the time of the institution of the plaintiffs, again went upon the property and shot the well a second time. It is admitted that the property in question is of the value made in the declaration. That the property in controversy was taken by the plaintiffs at the time of the institution of this suit by giving bond, and that the same was not replevied by the defendant.

"It is admitted that a demand was made upon the defendant for the property in controversy shortly before the institution of this action, the exact date being July 26, 1902, which demand in writing is filed as a part of this statement marked 'Demand.'

"That the lease under which the plaintiffs entered and placed the property upon the land of the defendant in the following words and figures:     *     *     *

"That all the property in controversy remained in place as it was at the time said well was drilled and operated until delivered to plaintiff by the sheriff in this suit.

"The record of the Chancery Cause of Willie Hickman against Thomas Gartlan, The Southern Oil Company, J. Perry Thompson, John F. Phillips and W. S. Mowris, instituted in the circuit court of Harrison county on the 31st day of December, 1901, is filed as a part of this statement, marked 'Exhibit Record.' The amount of the defendant's damages in the event the verdict and judgment shall be for the defendant shall be one hundred dollars.

"It is further agreed that of the twenty-two hundred feet of casing in the well originally, possession of only nine hundred and fifty feet was taken by the sheriff and delivered to the plaintiffs.

"Four hundred and twenty-five dollars being the value of that casing at the same rate averred here and agreed upon, the same is not involved in this suit."

The instruction given on motion of the plaintiffs is in the words and figures following:

"The jury is instructed that the plaintiffs were not deprived of the right to remove the property demanded in the declaration

under the evidence offered to the jury, if, from such evidence, the jury shall believe said property was placed upon the leased premises for the purposes of drilling or operating for oil and gas, by reason of the fact that a decree was entered by the circuit court of Harrison county, on or about the 27th day of May, 1902, in an equity suit brought by the defendant against the plaintiffs for such purpose, and that the plaintiffs would be entitled to a reasonable time after the termination of the suit in equity to remove said property from the leased premises."

The instructions asked for by the defendant and refused by the court, are in the following words and figures:

"1. The court instructs the jury that if they believe from the evidence that the property sued for by the plaintiffs was placed by the plaintiffs on the property of the defendant during the existence of an oil or gas lease, giving the plaintiffs the right to explore thereunder for oil and gas and if the jury further believe that said property or any part of it, was so placed upon the said Hickman's land as to give it the character of fixtures, or trade fixtures; and if the jury further believe from the evidence that the said oil and gas lease expired or became forfeited, or was in any wise terminated, and the possession of said plaintiffs under said lease was lost before said fixtures were removed from said land, then the jury should find for the defendant.

"2. The court instructs the jury that, after the expiration of an oil or gas lease by forfeiture or otherwise, the lessee cannot remove fixtures attached to the realty during the continuance of said lease, such fixtures become a part of the realty, and go to the person entitled thereto after the expiration of the lease.

"3. The court instructs the jury that, as between lessor and lessee, fixtures erected by the latter, and which he is entitled to remove, must be removed during the term of the lease. After the expiration of the term of the lease, and the loss of possession thereunder, the tenant can neither remove said fixtures nor recover their value from the lessor.

"4. The court instructs the jury that, a lessee may remove fixtures which he has put on the leased premises at any time during the lease, or while he continues tenant, but after the expiration of the lease and the surrender of the premises to the lessor, he cannot enter on the premises and remove any fixtures,

for when he quits the premises, leaving his fixtures behind him, it will be presumed he intended to abandon them.

"5. The court instructs the jury that, if they believe from the evidence that said Phillips and Thompson lease was on the 26th day of November, 1901, for the non-payment of rent, or for any other reason forfeited, and if the jury further believes from the evidence that the plaintiffs, Thomas Gartlan and others were then or at any subsequent time in the month of December, prior to the 31st day of December, 1901, out of possession of the premises described in said lease for oil and gas purposes, and that the plaintiff, Willie Hickman, was then in possession thereof; and if the jury further believes from the evidence that the property here sued for was at the time of the forfeiture of said lease not severed and removed therefrom for more than six months threafter, then the jury should find for the defendant, Willie Hickman.

"6. The court instructs the jury that, if they believe from the evidence that the plaintiffs, Thomas Gartlan and others, after the completion of said well No. 1, paid on February 12, 1901, $125.00, on May 28, 1901, $125.00, on August 28, 1901, $125.00, as rental, and that on the 28th day of November, 1901, annual rental fell due and was not paid, and if the jury further believe from the evidence that, for non-payment of rental or any other reason, said Phillips and Thompson lease has been judicially ascertained to be, and decreed to be forfeited and cancelled; and if the jury further believe that at the time of such forfeiture and cancellation, and thereafter the plaintiffs, Thomas Gartlan and others, were out of possession of the premises described in said lease and that the said defendant, Willie Hickman, was in possession thereof; and if the jury further believes from the evidence that at the time of such ascertainment judicially of such forfeiture, and at the time of said cancellation, the property here sued for was attached to the real estate described in said lease, and were not severed therefrom until after the institution of this suit by virtue of an order made in this suit and without the consent of the said Hickman and against his protest, the jury should *find* for the defendant, Willie Hickman.

"The court instructs the jury that, if they believe from the evidence that the property sued for was at the time of the institution of this suit so attached to the realty of Willie Hickman

as to be trade fixtures; and if the jury further believe from the evidence that at the time of the institution of this suit the Phillips and Thompson lease had been cancelled, then the jury should find for the defendant, Willie Hickman."

Hickman contends, first, that the things sued for were and are fixtures; second, that they remained attached to the realty after the termination of the lease; third, that these fixtures, being so attached, at the time and after the lessee lost title to the lease, they cannot be removed from the land; and, fourth, that the lease ended on November 29, 1901, by forfeiture for the non-payment of rental by the lessees, and did not terminate by reason of the decree of the court, on the 22d day of May, 1902.

For the defendants in error, it is urged, first, that the things sued for were and are chattels; second, that they retain their character as personalty, and are not fixtures; third, that they may be removed by the lessees within a reasonable time after the expiration of the lease; fourth, and that the lessees are not precluded from the exercise of that right by the trial of the question of the forfeiture of the lease. By the express terms of the lease, the second parties have the right to remove all machinery and fixtures placed on the premises in the prosecution of their exploration and search for oil and gas. There can be no question as to what property may be removed, unless the right of removal has been lost to the lessees, or their assigns. The lease says that the second parties shall have the privilege of removal at any time.

The parties have agreed that the lease shall become null and void, if the rental be not paid as stipulated. The authorities cited in the case of *Guffy* v. *Hukill,* 34 W. Va. 49, seem to be full and clear that default in the performance of the condition of the lease by the lessee, *ipso facto* terminates and forfeits the lease, and all of his rights thereunder. In the chancery suit it was adjudicated that the causes of forfeiture existed as alleged, and therefore, the lease was cancelled. The said forfeiture, however, by the terms of the lease, and the decree of the court extends no further than to the *lease,* which "vested no present title in the lessees, except the mere right of exploration for oil and gas." *Steelsmith* v. *Gartlan,* 45 W. Va. 27; *Urpman* v. *Lowther Oil Co.* 53 W. Va. 501, 505. The completion of a non-productive well vested no title in the lessee. *Idem.* Therfore, the defendants in error forfeited only the right to further search

for oil and gas on the land. There is nothing in this lease declaring that upon its termination the machinery and fixtures placed upon the land by the lessees shall be the property of the lessor. The lessor has written in the contract the considerations and conditions upon which the lssees may search for oil and gas upon the land. The lease is of uncertain duration. The right of the lessees thereunder is dependent upon the completion of a well by them within a specified time, the payment of rentals, or the production of oil or gas from the land, in paying quantities. In order to complete the well, the lease allows the lessees ninety days from the date thereof. They are entitled to prosecute their search for the full ninety days with their machinery and fixtures; but at the end of ninety days, the well being unfinished, the lease would forfeit, unless the rental for the next quarter be paid in advance. It is untenable to contend that default being made as aforesaid, the lessees would not be permitted to remove their machinery and fixtures. So, if the time of search should be extended by payment of rental, the lessees would be entitled to the whole period, for the purpose of their exploration.

The object in placing the machinery and fixtures on the land was to enable the lessees to develop the leased premises. It was for the benefit of the lessees, and not to enhance the value of the land by permanent improvements thereon. Engines, derricks, oil tanks, casing and pipes, of the character described above, are not placed on farms, as farming implements, or to be used in connection with agriculture. "The chief test by which to determine whether an article is a fixture is to inquire whether the party annexing it intended it to be a permanent accession to the freehold." *Lumber Co.* v. *Bank,* 73 Am. St. R. 514, 518, note; *Fifield* v. *Farmer's Nat. Bank,* 148 Ill. 163, (39 Am. St. R. 166). In *Atchison, etc., R. R. Co.* v. *Morgan,* 16 Am. St. R. 471, it is held that "whether a chattel becomes a fixture depends upon the character of the act by which it is put into its place; the uses to which it is put, the policy of the law connected with its purpose, and the intention of those concerned." * * * "Before personal property can become a fixture by actual physical annexation to land, the intention of the parties, and the uses to which it is put, combine to change its nature from that of a chattel to that of a fixture." *Thompson* v. *Smith,* 82 Am. St. R. 541; Donahue on Pertoleum and Gas, 72. In *Johnson's Exr.*

*v. Wiseman,* 4 Metc. (Ky.) 360, 17 Am. Dec. 693, note, it is said: "The question whether chattels are tó be regarded as fixtures depends less upon the manner of their annexation to the freehold, than upon their own nature and their adaptation to the purposes for which they are used." *Cooper* v. *Johnson,* 9 N. E. Rep. 33.

Thornton on Oil and Gas, at section 567, says: "When the parties immediately concerned, by an agreement between themselves, manifest their purpose that the property, although it is annexed to the soil, shall retain its character as personalty, then, except as against persons who occupy the relation of innocent purchasers without notice, the intentions of the parties will prevail, unless the property be of such a nature that it necessarily becomes incorporated into, and a part of, the realty by the act and manner of annexation." The machinery and fixtures as they are called, were placed on the land for the sole purpose of enabling the lessees to explore for and produce oil and gas thereon. Should the lessees fail in their search, or oil and gas, or either be found and exhausted, this property would not be necessary for the use and enjoyment of the land by the owner as, a farm. The land could be used for its former purpose, farming, without this machinery better than with it remaining thereon, an impediment, instead of an advantage.

In the light of the authorities cited, we are of opinion that the machinery and fixtures placed on the leased premises, did not become permanent fixtures, nor parts of the freehold; and that the plaintiffs' right and title thereto did not vest in Hickman by the forfeiture of said lease, as aforesaid.

The time for the removal of the property is not definitely fixed by express terms, with reference to the termination of the. lease. We have shown that the lessees could not be required to effect the removal before, or at the moment, the lease was terminated. Certainly they would not be required to make such removal during the pendency of the chancery suit, brought for the very purpose of determining whether or not the lease had been terminated. Thornton on Oil and Gas, at section 576, says: "Contingencies may arise that will not require the lessee to remove his fixtures at the expiration of the lease, or even within what would have otherwise been a reasonable time. Thus where there arose a dispute between the lessor and lessee as to

when the lease expired and the controversy was taken into the courts, and was decided against the lessee, it was held that the lessee could remove the fixtures at the termination of the suit, although the lease had long before expired; and if the lessor had refused to permit the lesssee to so remove them, he was liable in damages." "Where anything is to be done, as goods to be delivered, or the like, and no time is specified in the contract, it is then a presumption of law that the parties intended and agreed that the thing should be done in a reasonable time." 2 Pars. on Con., sections 535, 651; Hammon on Con., section 444; *Poling* v. *Condon-Lane B. & L. Co.*, 47 S. E. Rep. 279.

In the case of *Shellar* v. *Shivers*, 171 Pa. 569, 572, where the right of removal of machinery and fixtures was involved, the language of the lease was, that the lessee should have the right to remove "at any time" any or all machinery. The court there denied the right of entry for the purpose of such removal four years after the lease had expired, and five years and six months after the well had been completed and found to be of no use as an oil or gas well. After construing the lease, the court says: "If this construction be correct then the rule of law as to removal of fixtures would be as in cases where the tenancy is uncertain in duration, as when it depends upon a contingency, and that is, that the removal must be made within a reasonable time; or in other words, the law in such cases allows the tenant a reasonable time for the removal of fixtures."

Thornton, at section 574, says: "Thus it was decided in New York that trade fixtures did not cease to be the tenant's property by reason of the mere fact that he did not remove them during his term; and that he could 'remove them after his term expired without subjecting himself to any damages for such removal, even though he be liable to an action for trespass for an entry on the premises demised.' *   *   * In Illinois it was held that the tenant had a reasonable time within which to remove trade fixtures, and what was a reasonable time was a proper question for the jury, under the instructions of the court." The author cites *Berger* v. *Hoener*, 36 Ill. App. 360; *Nigro* v. *Hatch* (Ariz.), 11 Pac. Rep. 177. The same author says at the same section, "This is undoubtedly true where a forfeiture of the lease takes place; and if the tenant is denied the right after the forfeitue to remove them, he may bring an action therefor, es-

pecially if the lease contain an agreemnt giving him the right to make such removal." *Sattler* v. *Opperman,* 30 Pittsb. Leg. J. (N. S.) 205; *Potter* v. *Gilbert,* 177 Pa. St. 159; 35 Atl. Rep. 597; 35 L. R. A. 580.

What is a reasonable time for the removal of the chattels is a question to be determined from all the facts and circumstances of the case. *Kuhlmann* v. *Meir,* 7 Mo. App. 260.

In this case, plaintiffs evidently had not abandoned the lease. Hickman alleges in his bill in the chancery cause that on the 31st day of December, 1901, the agents of Mowris, Gartlan and others, entered upon said land, with certain machinery and appliances, and proceeded to work on and about said well No. 1. It is agreed that they shot the well on January 15, 1902. It is proved that the notice to plaintiffs by Hickman on or about July 14, 1902, was the first knowledge they, or any of them, had, of the determination of said chancery cause; the cancellation of the lease; or the claim of Hickman to the property in controversy. On July 26, 1902, demand was made upon Hickman by defendants in error for the property, and, on August 1, thereafter, action was commenced therefor, as aforesaid.

It seems to us that defendants in error proceeded within a reasonable time to assert their rights to the machinery and fixtures in controversy; and that the circuit court did not err in giving the one instruction, and refusing the others.

We, therefore, affirm the judgment.

*Affirmed.*