[File No. 6119.]

WILLIAM T. HAMILTON, Respondent, v. JOHN H. CHARLE-BOIS, Appellant.

(248 N. W. 676.)

Opinion filed May 20, 1933.

George A. McGee, Harry E. Dickinson, E. R. Sinkler, G. O. Brekke, and John J. Coyle, for appellant.

*Halvor L. Halvorson* and *L. W. Halvorson,* for respondent.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiff in a claim and delivery action and from an order denying the defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial in so far as the same was denied. In disposing of the motion, the court granted a new trial limited to a determination of the damages for the detention of the property. The plaintiff does not appeal from this portion of the order, so we are concerned only with the judgment and the order in so far as the plaintiff recovers the property or its value. The facts essential to an understanding of the issues presented on the appeal may be briefly stated as follows: In July, 1930, the plaintiff, Hamilton, leased from the defendant, Charlebois, for a period of five years certain premises in the city of Minot to be occupied and used as a laundry. Hamilton immediately installed certain personal property by way of laundry equipment, some of which was involved in litigation which has heretofore reached this court. See Martyn v. Hamilton, 62 N. D. 445, 244 N. W. 15. The property involved in this suit, as enumerated in the judgment, is as follows:

"Four washing machines, American and Troy:
1—28 x 30
1—30 x 30
1—36 x 54
1—30 x 54

1—Desk and chair
1—Office table
1—Water softener
1—26-inch Troy extractor
1—Kelly water heater
1—Large electric switch box
1—Ten horse power electric motor
1—Five horse power electric motor
2—Laundry trucks
1—Hi pressure boiler
1—Marking table 4 x 10
1—American press
1—Sleever
4—Folding tables
2—Clothes racks
2—Paper cutters
15—Trays of marking pins
2—Finishing tables
1—Shaking table
    Stock of laundry slips
8—Dozen laundry nets.
½—Barrel of soap
1—Flat work ironer
2—Sections of ventilating stacks
6—Hangers
    Two inch and one inch pipes and two inch and one inch fittings
2—Steam traps
    Stock of office stationery
    Belting and pulleys
    Line shafting"

In December, 1930, Hamilton encountered financial difficulties and in January, 1931, there were some negotiations between him and Charlebois, or representatives of the latter, with reference to the payment of rent. The defendant contends an arrangement was made whereby rent was to be paid twice a month and that it was agreed that in case of default the property which Hamilton placed in the building would

be considered pledged as security for any unpaid rent. Hamilton did not pay the rent due in April ($125). On April 20, 1931, one of his creditors levied an execution upon the laundry equipment, whereupon Hamilton ceased business and surrendered the key to the sheriff. Immediately thereafter forcible entry and detainer proceedings were begun by Charlebois and a default judgment for possession was obtained about May 1st. Upon this judgment no execution was issued. On May 4th, the plaintiff filed a voluntary petition in bankruptcy and on the 6th was adjudicated a bankrupt. He scheduled as a debt his obligation to the defendant for rent and as an asset the laundry equipment. On May 22nd, the first meeting of creditors was held before the referee in bankruptcy, and with the apparent assent of the creditors no trustee was appointed. On the following day the plaintiff attempted to remove the property involved in this controversy from the building, but the defendant refused to permit its removal. The lease contained no stipulation with reference to the removal of any of the machinery or equipment installed by the plaintiff. Thereafter the defendant, or the defendant's son, started to operate the laundry, using much of the property here involved, and in the latter part of July this action was begun.

On this appeal the appellant contends (1) that the high pressure boiler became an integral part of the building and that the other items of property which were attached to the building could not be removed without doing material or substantial injury; (2) that even though property affixed by the plaintiff were removable during the continuance of the term, the plaintiff, by filing a voluntary petition in bankruptcy and obtaining adjudication without attempting to remove the property, in effect abandoned it; and (3) that Hamilton, in any event, lost any right he might have had to remove the property during the term by his failure to remove it after service of the notice to quit and by suffering judgment to be entered against him in the forcible entry and detainer action. Other contentions with respect to some of the items of property will be noted in the course of this opinion.

Concerning the boiler, the evidence tends to show that it was placed in the northeast corner of the basement with the stack running into the chimney; that before it was put in Hamilton obtained permission from Charlebois to make an excavation in the dirt floor about $3\frac{1}{2}$ feet

deep, 5 feet wide, and 10 feet long; that this excavation was made and the opening cemented at the bottom and at the sides; that there was no finished floor in that part of the basement; that the boiler was about $6\frac{1}{2}$ feet high and about 4 or $4\frac{1}{2}$ feet in diameter and weighed about $2\frac{1}{2}$ tons; that it was a part of the equipment which had been used by Hamilton in conducting a laundry in another building before he moved into the defendant's building; and that there were steam pipes leading from this boiler to different parts of the building and connected with various machines. It appears that after the defendant took possession of the building he closed an opening in the floor over this boiler by putting in two steel stringers, attaching them to the building with concrete and laying a floor on top; so that now it would be a difficult task to remove the boiler. The plaintiff's right to remove it must be determined, however, as of the condition existing before the defendant had made the alteration in the floor above the boiler. The record does not show any circumstances in connection with this boiler existing at the time the plaintiff attempted to take his property from the building that would cause it to be considered on any different basis from the machinery, such as washing machines, driers, water softener, et cetera, that, like it, was used in operating the laundry. 26 C. J. 700.

The testimony was conflicting with reference to the agreement claimed by the defendant whereby the property was to stand as security for the rent. The jury having found against the defendant, it must be assumed on appeal that such agreement was not made. The evidence shows that much of the property enumerated above was clearly not affixed to the building in such a way that its removal would do any appreciable damage to the freehold and some of it was not attached at all or even used by the defendant or his son in the operation of the laundry. It was simply stored, as it were, where it would be out of the way.

Concerning abandonment by the plaintiff, this court said in Martyn v. Hamilton, 62 N. D. 445, 244 N. W. 16, 17: "It may well be that, as between the tenant and the landlord, if a tenant abandons his fixtures and his tenancy, they remain a part of the real estate; but the tenant by abandonment could only abandon whatever interest he had therein. His abandonment could not affect the interest of the chattel mortgagee. However, it is a serious question whether Hamilton aban-

doned the fixtures in the proper sense of that term. His tenancy did not expire by limitation. He was evicted, and as pointed out in Shepard v. Alden, 161 Minn. 135, 201 N. W. 537, 539, 202 N. W. 71, 39 A.L.R. 1094, he did not leave voluntarily. 'Abandonment is made up of two elements: act and intention. There must be an actual relinquishment of the property, accompanied by an intent to part with it permanently, so that it may be appropriated by any one finding it or having it in his possession.' " We are satisfied that the record here does not show abandonment on the part of the plaintiff, so it cannot be said that the defendant acquired this property through abandonment by the tenant, the plaintiff.

This brings us to the most vital question in the case as regards the articles which were trade fixtures, could the plaintiff rightfully remove them after the defendant had retaken possession of the building on account of the failure of the plaintiff to pay rent, which failure amounted to a breach of condition? It may be conceded that, according to the weight of authority, a tenant loses his right to remove trade fixtures during the term where on account of a breach of a condition in the lease he has forfeited the remainder of the term and where the landlord has re-entered. See 26 C. J. 707; 2 Tiffany, Land. & T., § 242d, pp. 1590, 1591. But we are of the opinion the better view is that the right of removal as between landlord and tenant is not terminated at once upon the forfeiture of the term on account of a breach by the tenant of the terms of the lease. Property interests of large value should not be arbitrarily subjected to the hazard either of the physical or legal ability to effect a physical removal within the short space of time that may be adequate to work a change in the possession of the real property. The modern law has been more favorable to tenants, particularly as to property annexed for purposes of trade, since it is not readily presumed that there was any purpose to benefit the freehold. Lewis, Leases of Real Prop., 2d ed., p. 206. There is not such a relation between the damage inflicted by the tenant's breach and the value of the fixtures as to justify their retention by the landlord. The ends of justice in such cases, in our opinion, are better served by the adoption of the rule that, where a tenancy is cut short on account of acts which work a forfeiture by the tenant of the remaining term, a reasonable time is allowed in which to remove fixtures. As tending

to support this rule, see Updegraff v. Lesem, 15 Colo. App. 297, 62 Pac. 342; Mickle v. Douglas, 75 Iowa, 78, 39 N. W. 198; Moore v. Wood, 12 Abb. Pr. 393; Miller v. Hennessy, 47 Misc. 403, 94 N. Y. Supp. 563; Gartland v. Hickman, 56 W. Va. 75, 49 S. E. 14, 67 L.R.A. 694; Re Howard Laundry Co. (C. C. A. 2d) 203 Fed. 445, 30 Am. Bankr. Rep. 167. For additional cases pro and con, see note in 39 A.L.R. 1099.

Our statute, § 5472, Compiled Laws of 1913, as amended by chapter 129 of the Laws of 1929, defining fixtures and providing for their removal by the tenant at any time "during the continuance of his term," does not necessarily call for a more strict interpretation of the right of removal. The statute is but an expression of the common law rule and reference to the term in the statute is to the full term of the lease, leaving the matter of a more limited exercise of the right where the full term is cut short for determination according to appropriate legal or equitable principles. We are not persuaded by a holding apparently to the contrary in Bush v. Havird, 12 Idaho, 352, 86 Pac. 529, 10 Ann. Cas. 107.

Error is predicated upon instructions of the court dealing separately with two items of property, one a starting switch for the electric motors, and the other a flatwork ironer. The court instructed, in substance, that the contention of the defendant that the plaintiff could not recover for these items because the first appeared to be owned by the Northern States Power Company and the second by one Ed Ehr, from each of whom the plaintiff had purchased under a conditional contract, was not supported by any substantial evidence. It is pointed out that the record shows the defendant after obtaining possession of this property made certain payments to the power company and to Ehr, but the record further shows that the plaintiff had made substantial payments and that the contracts of purchase had never been rescinded or foreclosed. While Ehr testified he owned the ironer and leased it to Charlebois, he did not dispute the testimony of Hamilton either as to the cash payments made or as to payment of the balance through laundry work done for Ehr. We think the instructions complained of were warranted by the state of the evidence.

Specifications 4, 5 and 6 relate to the request of the plaintiff that the court take judicial notice of the judgment roll in the case of Martyn

v. Hamilton, supra, and to remarks of counsel and the court in connection with that request in which the court expressed an opinion in the presence of the jury that the rights which Charlebois claimed in the property were determined against him in that action and that he was bound by the judgment. The judgment roll in that action is not made a part of the record on this appeal, and it appears from the instructions of the court that the issues between the plaintiff and the defendant here were submitted to the jury for its determination independent of the judgment in the former action. While that judgment may not be conclusive between the plaintiff and the defendant in this action, we cannot say that the comment regarding it was necessarily prejudicial error in the instant trial.

We have carefully considered the entire record and we are of the opinion that a fair trial has been had. The judgment and order appealed from are affirmed, subject to a new trial granted by the trial court on the question of damages for detention.

NUESSLE, Ch. J., and BURKE, CHRISTIANSON and BURR, JJ., concur.