J. E. RAY, Guardian of John H. Ray, Appellee, v. ELMER YOUNG, Appellant.

**Landlord and tenant:** LEASE BY LIFE TENANT: RIGHTS OF REMAINDERMEN. A lease by a life tenant is not binding upon remaindermen and will only be considered, in an action to enjoin the tenant from removing a building from the premises, in so far as it bears upon the rights of the lessee at the time of the death of the life tenant.

**Same:** TRADE FIXTURES: RIGHT OF REMOVAL BY TENANT. A trade fixture which, as between a tenant and his lessor, may be removed by the tenant, is an article annexed to the real estate by the lessee for the purpose of enabling him to carry on his trade or business on the premises; and as between the tenant and lessor it may be removed from the premises by the tenant within a reasonable time after termination of the lease, and irrespective of any provisions of the lease, if it can be done without substantial injury to the premises. A building constructed by the tenant for use as a garage and repair shop, and used for that purpose, though connected with an existing building by a shed, is such a trade fixture as may be removed.

**Same:** REMOVAL OF FIXTURE: REASONABLE TIME. The right of a lessee of a life tenant to remove a trade fixture constructed by the tenant is not necessarily lost by a termination of the lease by the death of the life tenant; but he has a reasonable time thereafter to surrender possession and remove the fixture.

**Same.** The tenant in the instant case remained in possession of the premises after the death of the life tenant for the remainder of the year for which he had paid rent in advance. Shortly after the death of the life tenant he negotiated with the remaindermen for a continuance of the tenancy but no lease was executed, and at about the close of the year for which he had paid the rent he prepared to move the building he had erected. *Held*, that he acted with reasonable promptness and could remove the building.

**Same:** FAILURE TO RESERVE TRADE FIXTURES IN NEW LEASE: EFFECT. A lessee having the right under his original lease to remove trade fixtures does not lose that right by making a new lease of the premises which is silent on the subject. The evidence in the instant case, however, is held insufficient to establish a new lease.

**Same:** REMOVAL OF TRADE FIXTURES: INJURY TO PREMISES. A lessee having the right to remove trade fixtures must do so without substantial injury to the premises, and must leave the premises in as good condition as he found them.

*Appeal from Linn District Court,* HON. MILO P. SMITH, Judge.

WEDNESDAY, JULY 2, 1913.

SUIT in equity on behalf of the owner of real estate to enjoin a tenant from removing a building therefrom which had been erected by the tenant thereon during his tenancy. The defendant tenant was the lessee of Mrs. L. E. Ray, who subsequently died and who owned a life estate only in the premises, although this latter fact was not known to the defendant at the time of his lease. The defendant entered upon the premises in November, 1909, under a written lease which permitted him to erect a building thereon with the right of removal thereof. He erected his building and continued in possession until after the death of his lessor. He thereupon proceeded to remove the building. The plaintiff, as

remainderman, brought this action by his guardian to restrain such removal. There was a decree for the plaintiff, and the defendant appeals.—*Reversed.*

*J. H. Preston,* for appellant.

*Deacon, Good, Sargent & Spangler,* for appellee.

EVANS, J.—The plaintiff is the great grandson of the former husband of Mrs. L. E. Ray. Some years before the lease in question Mrs. Ray and her husband had conveyed the real estate involved herein to the plaintiff, subject to a life estate therein in favor of Mrs. Ray, and such conveyance appeared of record. The property so conveyed consisted of a lot in the town of Palo, Linn county, and a small and old building thereon sixteen by twenty-four in dimensions. The negotiations between the parties to the lease began with the following letter dated October 17, 1909, from Mrs. Ray to the defendant Young.

Mr. Young—Kind Friend: I received a letter from Ed Sisley today in regard to renting of the shop on the corner and the lot. I will say do you not think three dollars is a small sum per month. I think that I ought to get four dollars per month out of it, by paying the tax out of it. If you wish to have it at that price you can have it as long as you want it with the privilege of removing the part you put on when the lease expires. I will see my brother Ed he lives at Walkerton to write up a lease to that effect as soon as I can, if everything is all right with you. I hope this will be satisfactory to you. Mr. Young my address is 820 East Washington street. Hoping to hear from you soon. Your friend, L. E. Ray. (Over.)

If you want it at that price you can commence it tomorrow and take possession at once and I shall see that the lease is coming all right.

Later a written lease was executed under date of November 1, 1909, by which the premises were leased to the defend-

ant for the term of one year, with the privilege of five, for the sum of $48 per year in advance. Such lease contained the following provision: "Mr. Elmer Young having the privilege of adding to this building and removing the same at the expiration of the lease." Young went into possession and built a building on the premises "30x50" and connected the same with the old building, as will be indicated later. The purpose of the building was for use as a garage and repair shop, and it was so used during the entire tenancy of the defendant. The defendant continued in possession of the premises under his lease until the death of Mrs. Ray, which occurred June 8, 1911. He had previously paid the rent in advance to January, 1912. He continued in possession of the premises throughout the year 1911 with the knowledge and acquiescence of the plaintiff and his guardian. There is some dispute at this point between the parties, which will be considered later, as to what the understanding between them was during this continued occupancy after the death of Mrs. Ray. But it is undisputed that such occupancy did continue with the consent of the plaintiff. There were in the meantime negotiations between the parties looking to a new lease; the plaintiff, however, demanding a larger rental. On January 3, 1912, the defendant, while preparing to remove his building, was served with a temporary writ of injunction issued herein. The injunction was made perpetual upon final decree. The effect thereof is to wholly deprive the defendant of all right of property in his building.

The equity of good conscience is not with the plaintiff in this case. If he is entitled to the decree awarded below, it must be upon the ground of absolute legal right unaffected by equitable considerations. The argument on behalf of the plaintiff is that he is not bound by the terms of the contract between the defendant and his lessor; that the rights of the defendant under his contract terminated with the death of such lessor; that the death of such lessor terminated not only the defendant's right of occupancy but his right of removal

of the building; that the right of removal provided for by
the terms of the lease could only be exercised during the term
of the tenancy; and that at the death of the lessor the building
passed to the remainderman as a part of the real estate. It
is also contended that after the death of the lessor the defend-
ant entered into a new oral lease with the plaintiff, and that
he became thereby estopped from claiming ownership of the
building. We will consider these contentions in the order
stated.

It must be conceded that the terms of the contract between
the defendant and his lessor are not binding as such upon the
plaintiff as remainderman. *Stewart v. Matheny,* 66 Miss. 21

1. LANDLORD AND
TENANT: lease
by life ten-
ant: rights of
remaindermen.

(5 South. 387, 14 Am. St. Rep. 538); *Jones v.
Shufflin,* 45 W. Va. 729 (31 S. E. 975, 72
Am. St. Rep. 848). This contract can be con-
sidered only as bearing upon the rights of
the defendant as they were up to the time of the death of his
lessor. It is the contention of the plaintiff that such contract
cannot be considered for any purpose.

In view of such contention, we may as well inquire first
whether, independent of the provision of the contract for the

2. SAME: trade
fixtures: right
of removal by
tenant.

right of removal, the defendant had a right
as between him and his lessor to remove the
building erected by him. And this depends
upon the further question whether or not the building should
be classified as a trade fixture.

The following testimony of the witness Hall is the only
consistent and intelligible description of the property which
we find in the record:

I live in Palo and am a carpenter by occupation; I as-
sisted in building the building for Mr. Young on the lot in
controversy; he employed me to do so. I am familiar with
the whole of the building as it now stands. The old build-
ing was one story, 16x24, facing south; it was moved back
about sixty feet, turned around so it faces the side street to the
west. There was a shed addition on the east end to make it

come out even with the new building. There is twelve feet of space between the old building and the new one; the new building was built 30x50 and then gabled up with a kind of quarter pitch roof, then this was shedded down to the old one in between the full width of the building. There was cement floors over the whole thing, the old ones and the new. It was used as a garage and blacksmith shop; before the old building was moved it was down to the ground and had no foundation under it; then it was moved back with a cement foundation under it; after it was moved back I helped to tear the floor out; the joists were all pretty near gone; wasn't any good at all. The sills were old; the pine floor held it together; that floor was taken out and a cement one put in. (Cross-examination): The new part of the building was frame 2x6 two feet apart and ten feet high rafters two feet apart covered with shiplap or dropsiding. It wasn't plastered inside; the roof was a common, ordinary roof, rubberoid. It ran back about fifty feet from the front to the rear and then the roof sloped off for the last twelve feet and shedded down to the old building. It had a cement floor which extended from the back end of the old part to the front end of the new part. The sills to the new building ran back sixty-two feet; the shed was connected round the rear end of the old building the same as one of those barns you have in the country with the cow-shed built on the side. By the Court: Q. Was that twelve feet cut off from the fifty feet by partition and doors? A. Yes, you see it was a building 30x50, and then that was sided up just like a barn and just left two big doors, and then a shed built on that, and it left in there another room; all that there was between there was two big double doors. There was nothing between the twelve-foot room and the old building. The twelve-foot room is as long as the old room east and west. The shed points down to the eaves of the old building and carries the water off to the eastward. There was no new roof on the old building put on at the time this addition was built; it had a shingle roof. The foundation of the new building is cement. The floor stands on top of the cement. I saw them putting in some filling in the old building—dirt taken from the northerly end of the lot except some sand they hauled from the river. There used to be an old barn on the north of the lot, and what they call a rivulet comes down there; it always fills in there with water; it was always lower down

there. It is about thirty feet from the north side of the old building to the north end of the lot.

Without dispute the building was built and used for garage and repair-shop purposes. The following excerpts from the authorities is a sufficient indication of the general rules concerning the definition of trade fixtures.

The question as to what particular articles erected by a tenant on the demised premises in relation to his trade come within the protection of the law as being trade fixtures, and hence removable by the tenant at the expiration of his term, gives rise to a great variety of considerations as to the nature of the article, its use, the degree of annexation, etc. Such annexation may consist of articles of machinery, utensils, etc., of a perfect chattel nature before annexation was made, and capable of detachment and use elsewhere in connection with other realty; or the articles annexed may consist of buildings, etc., of a more or less substantial and permanent nature, more or less capable of removal and reconstruction, and which have hitherto had no existence as integral chattels, except in connection with the land whereon they stand. Ewell on Fixtures (2d Ed.) page 139.

Since the strict application of the rule that things annexed to the land, although at the time of annexation belonging to a person other than the owner of the land, become a part of the land would operate to give to the landlord all articles annexed by the tenant for the better enjoyment of the premises, and so tend to prevent the making of improvements by him and the most beneficial utilization of the premises, the rule has been subjected to considerable relaxations in the tenant's favor, and certain classes of articles, although of such character and so affixed that, as between persons in other relations, they would be treated as permanent annexations, are ordinarily removable by him.

There are occasional statements to be found to the effect that all annexations made by the tenant for the better enjoyment of the premises are removable by him, but these are not in accord with the weight of authority, which is substantially that the tenant's rights of removal are restricted to: (1) Trade fixtures; (2) domestic and ornamental fixtures; and by

some decisions (3) agricultural fixtures. These various classes of fixtures and the tenant's rights in reference thereto will be considered in the above order.

The exceptional right of the tenant to remove fixtures annexed for the purpose of trade was, in a quite early case, stated to exist 'in favor of trade and to encourage industry,' and that seems the logical ground on which to base it. Occasionally it is said to be based on the presumption of an intention on the part of the tenant subsequently to remove the article, but there appears no more reason for such a presumption when the annexation is for purposes of trade than when it is for any other purpose.

As before remarked, it is a reasonable presumption that in every case of an annexation by a tenant having an estate of limited duration he intends, if possible, to remove the article annexed upon the termination of his interest, but such an intention should not, it seems, affect the rights of the remainderman or reversioner. Occasionally, moreover, the court seems to have regarded the question whether a particular article is a trade fixture, for the purposes of the rule, as dependent upon whether the tenant intended it to be a trade fixture. But whether an article is a trade fixture is, it is conceived, in no way a question whether it was intended so to be, there usually, indeed, being no intention in this regard, but it is rather a question whether, so far as appears from the nature of the article and the mode in which the premises were utilized, it was annexed for the purpose of aiding in the conduct of a trade.

The determination of the question whether a particular article or structure comes within the rule, as being evidently annexed by the tenant to aid in the carrying on of his trade or business, seems to involve but little difficulty. There have, however, been numerous adjudications upon the subject, and engines and boilers, industrial machinery, and apparatus of various kinds, appliances annexed by the proprietor of a place of public entertainment or amusement, buildings, or parts of a building, and even plants grown by a nurseryman, have all been regarded as trade fixtures in particular cases and as therefore removable. Generally, it seems, an article so annexed as to be part of the realty is a trade fixture if the purpose of the annexation was to aid in the conduct of a calling exercised for the purpose of pecuniary profit, provided this

calling is not exclusively agricultural in its nature, and the fact that the article has also the qualities of a domestic or agricultural fixture is immaterial in this respect. (Tiffany, Landlord and Tenant, pages 1570-1574.)

Beyond question the building under consideration in this case was built by the defendant and used by him strictly for trade purposes within the meaning of the law on that subject. Regardless, therefore, of the particular provision in the defendant's contract with his lessor, he had a right to remove his building as between him and his lessor as a "trade fixture," provided, of course, that he could do so without substantial injury to the premises.

Taking such right as it then was immediately preceding the death of the lessor, the question is then projected whether his right of removal of his own property from the leased premises terminated instanter by the death of his lessor or whether he was entitled to a reasonable time to remove his property from the premises. There are cases which hold to the strict rule of forfeiture against the tenant in such a case. *Stewart v. Matheny; Jones v. Shufflin, supra.* We have never followed such a rule of forfeiture in this state; neither have we had occasion to pass upon the exact question now before us. The principle or theory upon which such rule is said to be based is that the fixtures erected by a tenant become a part of the realty as soon as erected, and that there is no right of property therein to the tenant, his right being in the nature of a privilege or license to sever the same from the realty and repossess himself thereof, and that a failure to exercise such right or privilege during the term of the tenancy is in legal effect a complete abandonment or "dereliction" to the landlord. This theory of the nature of the right of the tenant to fixtures erected by him has been repudiated in many jurisdictions, including our own, as will be hereinafter noted. The previous holdings of this court in that respect have been that the tenant has a right of property in the fixtures so erected

3. SAME: removal of fixtures: reasonable time.

by him, although he may lose his right of property on the theory of abandonment by the failure to make timely removal thereof. While such right remains the property is deemed as the personal property of the tenant as between him and the landlord.

We think the weight of authority and reason is that the right of removal is not necessarily lost by the mere expiration of the term. An active duty devolves upon the tenant to exercise his right promptly, in view of all the circumstances of the case, and ordinarily he is required to exercise it before an actual surrender of the possession of the premises. But, as long as he continues in possession with the acquiescence of the owner, his right of removal continues accordingly. *Gartland v. Hickman,* 56 W. Va. 75 (49 S. E. 14, 67 L. R. A. 694) ; *Sheller v. Shivers,* 171 Pa. 569 (33 Atl. 95) ; *Berger v. Hoerner,* 36 Ill. App. 360; *Preston v. Briggs,* 16 Vt. 124; *Burk v. Hollis,* 98 Mass. 55; *Beckwith v. Boyce,* 9 Mo. 560; *Weeton v. Woodcock,* 7 Mees. & W. 14; *Merritt v. Judd,* 14 Cal. 59; *Morey v. Hoyt,* 62 Conn. 542 (26 Atl. 127, 19 L. R. A. 611) ; *Youngblood v. Eubank,* 68. Ga. 630; *Erickson v. Jones,* 37 Minn. 459 (35 N. W. 267) ; *Loughran v. Ross,* 45 N. Y. 792 (6 Am. Rep. 173) ; *Alexander v. Touhy,* 13 Kan. 64; *Leader v. Homewood,* 5 C. B. (N. S.) 546; *Barff v. Probyn,* 73 Law T. (N. S.) 118; *Mackintosh v. Trotter,* 3 Mees. & W. 184; *Wright v. Macdonnell,* 88 Tex. 140 (30 S. W. 907) ; *Allen v. Kennedy,* 40 Ind. 142; *Hedderich v. Smith,* 103 Ind. 203 (2 N. E. 315, 53 Am. Rep. 509).

The following from Tiffany on Landlord and Tenant, page 1585 *et seq.,* is a sufficient resume of the authorities on this question:

A question has frequently arisen as to the time at which the right to remove trade, ornamental, or agricultural fixtures must be exercised, and it is difficult to extract a uniform rule from the decisions in this regard. In some decisions it is stated that the removal must be made during the term, in some that the right expires with the tenancy, and in some

that it may be exercised a 'reasonable time' after the expiration of the term. It has occasionally been stated that the tenant's right of removal continues 'during his original term, and during such further period of possession by him as he holds the premises under a right still to consider himself as tenant,' or during what may, for this purpose, 'be considered as an excrescence on the term,' or 'during his rightful continuance in possession.' What is the exact meaning of some of these statements it is difficult to say, but a number of cases recognize the right of the tenant to remove the fixtures even after the term, provided he does so before he relinquishes possession of the land; it being said in some that he may make the removal before such relinquishment of possession, and in others that he must do so. The decisions or *dicta* to the effect that a tenant holding over has the right of removal, and that he loses the right by giving up possession of the premises, are usually in terms based on the theory that by yielding possession he indicates an intention to abandon the fixtures, and that no presumption of such an intention arises so long as he continues his possession. But, as has been well remarked, if his rights as to the fixtures on the premises are to be determined by the presumption of his intention to abandon *vel non*, the same rule should apply to chattels on the land not so annexed as to become fixtures, and he would lose all right to them by relinquishing possession of the land, which he certainly does not do. This theory of a presumption of abandonment, however, seems the only possible one on which, in any jurisdiction in which removable fixtures are regarded as personalty, to support the view that the right of removal is lost by the tenant's relinquishment of possession of the land. On the other hand, regarding the fixtures as constituting a part of the land, with a mere right of removal in the tenant, it is perhaps difficult to see why a tenant should be enabled, by wrongfully holding over, to extend the period for the removal of the fixtures, thus profiting by his own wrong. Such a case, it might seem, would be governed by a rule different from that which governs when he holds over rightfully; that is, by permission. In the latter case, it has been decided, the right of removal continues.

(b)   Tenancy of uncertain duration. If the tenancy is of uncertain duration, such as a tenancy at will, or if it is subject to termination on a certain contingency, the tenant

has a 'reasonable time' after its termination within which to remove the fixtures, provided at least the termination is not the result of his own voluntary act, and provided further, it seems, he has not relinquished possession. It has been questioned whether this principle would apply to a tenancy at will, when by statute the tenant is entitled to a reasonable notice to terminate, and there are cases somewhat adverse to' its application in favor of a tenant under a lease made by a life tenant, when the leasehold is terminated by the death of the lessor.

We quote from Ewell on Fixtures, page 293, the following:

As has been already stated in a prior chapter, the general rule that the right of removal of fixtures must be exercised before the expiration of the tenancy is necessarily subject to exception in those cases where the tenancy is of uncertain duration and liable to be determined by the happening of some contingent or uncertain event on which it depends, as in the case of a tenancy at will. And in analogy to the case of tenancy at will, it seems that, to say the least, the right of personal representatives of a deceased tenant for life or in tail to remove the fixtures to which they are entitled is not terminated until after the expiration of a reasonable time after the death of the person whom they represent. Whether the right of removal shall be considered to extend further than this, the authorities do not declare.

In the light of the foregoing we are disposed to follow the more equitable rule which allows the lessee of a tenant for life a reasonable time after the death of his lessor to surrender his possession and remove his property. This is not only equitable as between all the parties, but the contrary rule tends greatly to the unnecessary depreciation of the rental value of a life estate by the constant menace of forfeiture.

II. Was the defendant guilty of undue delay in the removal of his property in this case? This is largely a ques-

tion of fact under the evidence in this record. No objection was ever made to his continued possession.

4. SAME.          On the contrary, in August negotiations were entered into between the defendant and the plaintiff's guardian looking to a continuance of the tenancy. It is the testimony of the plaintiff's guardian that they did agree orally to a one-year lease at $75 rental. As will be seen later, a part of the plaintiff's case is based upon this alleged new lease. The defendant denies that they ever reached an agreement for a new lease but admits that negotiations were pending between them. Manifestly an immediate removal of the building pending the negotiations for a continuance of the tenancy would of itself tend to render such negotiations futile. The negotiations of themselves manifestly contemplated the maintenance of the *status quo* while they were pending. Whether, therefore, an agreement was actually reached, as contended by appellant, or whether the negotiations were simply pending, in either case the delay of removal was in harmony therewith and was therefore necessarily reasonable. On this branch of the case, therefore, we must find that defendant acted with reasonable promptness in the proposed removal of the building.

III. The next contention of the plaintiff is that the defendant accepted from him a new oral lease of the premises in August, 1911, and that he made no reservation therein of

his right to the building, and that he thereby

5. SAME: failure to reserve trade fixtures in new lease: effect.          abandoned the same to the plaintiff as a part of the real estate. If the defendant abandoned his building to the plaintiff, he did so by force of legal construction and not by actual word or intent. There are cases which hold with grim severity that by the acceptance of a new lease by a tenant from his landlord, which omits a reservation to him of his previous property in fixtures, he thereby, as a matter of law, surrenders such property to his landlord and loses all rights therein except those of a tenant under the new lease. *Carlin v. Ritter,* 68 Md.

478 (13 Atl. 370, 16 Atl. 301, 6 Am. St. Rep. 467). The cases supporting this view will be found collected in the opinion of the Maryland court in the cited case.

The rule here announced, however, was expressly changed by legislation in Maryland since the decision referred to. In this state we have heretofore, by our previous decisions, repudiated such rule, although it was then sustained perhaps by the numerical weight of authority. *McCarthy v. Trumacher,* 108 Iowa 284; *Daly v. Simonson,* 126 Iowa 719. The question is therefore quite settled for this jurisdiction. To the same effect see *Kerr v. Kingsbury,* 39 Mich. 150 (33 Am. Rep. 362); *Radey v. McCurdy,* 209 Pa. 306 (58 Atl. 558, 67 L. R. A. 359, 103 Am. St. Rep. 1009); *Wittenmeyer v. Board,* 10 Ohio Cir. Ct. 119; *Wright v. Macdonnell,* 88 Tex. 140 (30 S. W. 907); *Bank v. Merrill Co.,* 69 Wis. 501 (34 N. W. 514).

The question is discussed in Tiffany on Landlord and Tenant as follows (pages 1593-1597):

Acceptance of new lease by tenant. The weight of authority is to the effect that by the acceptance from the landlord of a new lease, containing no mention of fixtures annexed during the tenancy under the former lease, the tenant loses his right to remove such fixtures; the theory being that, the fixtures being a part of the land, the tenant, by an acceptance of the new lease, takes such an interest in the fixtures only as he does in the land (that is, a merely temporary interest). Occasionally a decision to this effect lays some stress upon the fact that the new lease contains a covenant by the lessee to yield up the premises at the end of the term in as good condition as at the time of the lease, but it does not seem that this can be material since, even in its absence, a tenant has no right to remove improvements covered by the lease to him.

This doctrine has been held to apply as against one to whom the right to remove the fixtures has been transferred by the tenant who annexed them, upon the taking of a new lease by such transferee, and it has also been decided that such a transferee loses his right of removal if his transferror, while still in possession of the premises, takes a new lease. The

rule has even been applied as against a sublessee who, after making annexations, took a new lease from the original lessor.

Since this doctrine is based upon the theory that the new lease includes the fixtures, as constituting a part of the realty, it necessarily follows that it has no application to articles not so annexed, or not of such character as to constitute fixtures. Furthermore, it would seem to be inapplicable in any jurisdiction where removable fixtures are regarded as personal property, since, if personal property, they would not ordinarily be covered by a second lease, which is in terms of the land only.

There seems to be some inconsistency between this rule, as asserted, that a renewal lease puts an end to the right of removal and the decisions before referred to that a tenant holding over by permission does not lose his right of removal; since such permission is in effect a new lease, though only for a brief or indefinite space of time. The cases, however, undertake to distinguish in this regard between a holding under an extension of the original lease and under a new lease, without, it may be said, asserting any satisfactory ground of distinction. In one case the question of the applicability of the rule is regarded as dependent on whether the right of continued possession is given orally or in writing, while in others it is regarded as dependent on whether the continued possession is on the same terms as before; it being in such case regarded as under a mere extension of the old lease, while it is under a new lease if the terms are different.

In two or three jurisdictions the doctrine that the acceptance of a new lease, not referring to the fixtures, involves a loss of the right of removal has been repudiated. As before suggested, in so far as in either of these jurisdictions removable fixtures may be regarded as personalty, this view seems the only possible one, and the judicial statements to the effect that the right of removal is not lost by the new lease seem in fact to be based on the theory that the fixtures are the personal effects of the tenant, without, however, any apparent recognition of the fact that the doctrine criticised involves the view that the tenant does not own the fixtures but has a mere right of removal. In one case it was decided that the doctrine did not apply in view of evidence that the language of the new lease was not intended to cover the fixtures, supported by a presumption from the relation of the parties that

this was not intended.   It seems that, when the description in such lease is general in terms, evidence would always be admissible to show that it was not intended by the parties that the fixtures should be covered thereby.

The following from *Daly v. Simonson, supra,* will be a sufficient discussion at this point:

True the last lease did not contain any reservation or exception, but it did not cover anything aside from the land and its proper fixtures.   It surely did not deprive defendant of his property.   Of course a tenant must ordinarily remove fixtures and improvements within a reasonable time after the expiration of his lease.   *Mickle v. Douglas,* 75 Iowa, 78. There are some cases which seem to hold that if a tenant takes a renewal lease, which contains no reservation, he by that act surrenders his right to removal of the fixtures placed by him upon the land during the term created by the prior lease, but we have not followed that rule.   *McCarthy v. Trumacher,* 108 Iowa, 284; *Union Co. v. Willmar,* 116 Iowa, 392.   When the improvements were erected in this case, they by express agreement between the landlord and tenant were personal property, and by taking the lease from plaintiff defendant did not surrender his claim thereto.   See *McCarthy* case, *supra,* and the following: *Kerr v. Kingsbury,* 39 Mich. 152 (33 Am. Rep. 362); *Bank v. Merrill,* 69 Wis. 501 (34 N. W. 514); *Fischer v. Johnson,* 106 Iowa, 182; *Wright v. Macdonnell,* 88 Tex. 140 (30 S. W. 907).   So that, even if the lease from plaintiff and Butler to defendant be not reformed, we do not think defendant lost his title to the personal property.

In the case before us there is no claim of any special provision in the alleged new lease which of itself negatived the right of removal of the building.   Reliance is placed solely upon the fact that an alleged new oral lease was made.   Taking the plaintiff's own testimony for it, it does not appear that any terms were agreed upon, except the rate of rent and the period of the lease.

We may as well say further that in our opinion the evidence would not warrant a finding that a new oral lease was

consummated by agreement between the parties. It appears from plaintiff's own evidence that they contemplated a written lease and that they never got together to make it. What terms were to be included in such written lease apart from the period thereof and the rate of rent does not appear. The conduct of the parties and all the circumstances corroborate the defendant in the claim that their negotiations never reached the final word. Of course this conclusion does not forbid the recovery of rent by plaintiff for the period of defendant's occupancy. It is our conclusion that the defendant was within his rights in the attempted removal of his building.

We hardly need to say that in so removing it he was bound to do so without substantial injury to the premises

6. SAME: removal of trade fixtures: injury to premises.

and that he was bound to leave the property in as good condition as when he found it. This he offered to do and his offer was full and complete. We are quite satisfied from the evidence that it was not impracticable for him to so put the property.

It follows that the decree below must be reversed, the plaintiff's petition and the writ of injunction dismissed. The defendant will be awarded a reasonable time after the final disposition of this case to remove his building and to put the property of the plaintiff in proper condition.—*Reversed.*