L. F. FEHLEISEN, Appellant, v. C. C. QUINN, Receiver, Appellee.

FIXTURES:   Trade Fixtures—Intention—Matters Bearing on Inten-
tion—Landlord and Tenant.   On the issue whether machinery, tools, etc., attached to a building, are trade fixtures and removable, or are a part of the realty, the *intention*, express or implied, of the parties is controlling.   Material considerations bearing on *intention* are: (1)   Whether the party attaching the machinery, etc., was, at the time, the *owner* of the real estate, or was, to all intents and purposes, a mere *tenant*, though occupying under a formal contract for absolute conveyance;   (2) the *solvency* or *insolvency* of the one attaching the machinery, etc., at the time he did attach it; and (3) the *manner* in which the things were attached.

PRINCIPLE APPLIED:   A manufacturing company occupied rented premises with machinery, including drills, presses, lathes, and other machinery, incident to a factory working in iron.   It removed to newly rented premises, and took its machinery to the new location.   Later, it removed to another town, again taking its machinery.   Prior to this last removal, plaintiff had erected on his lots, and for the company, a $7,500 building.   Before the building was finished, and while it was empty, plaintiff entered into a contract to convey the lots and building to defendant, upon the payment of $100 per month, until the principal was paid, with interest.   The contract was to be "null and void" in case of forfeiture, and, in such case, the realty was to "revert" to plaintiff.   Three months later, the company moved into the said building.   The value of the machinery installed was about $5,000.   The company was then insolvent, was in default on the contract to purchase, and never paid a dollar on said contract.   The machinery, in so far as it was attached to the building, was, as to the superstructure, attached by nuts and bolts, and, as to the cement floor, by drilling holes for bolts and imbedding them in a soft cement, in order to facilitate removal.   Within 30 days after the machinery was installed, the plaintiff successfully moved for the appointment of a receiver for the company, and within 10 days thereafter, forfeited said contract, by proper notice.   The company was thereafter treated as the tenant of the plaintiff, and one month's rent was paid.   The receiver asked for an order to sell the ma-

chinery, etc. Plaintiff objected, claiming that such machinery was part of the realty.

*Held* that, to all intents and purposes, the company was, at all times, simply plaintiff's tenant, and that no presumption could be indulged that the company, in attaching the machinery, *intended* to make it a part of the realty.

**FRAUDULENT CONVEYANCES:** Consideration—Want of Consideration—Insolvent Tenant Attaching Fixtures to Realty. *Arguendo*, it is stated that the act of an insolvent tenant in so attaching machinery, etc., to the premises of the landlord as to render it part of the realty, without substantial consideration flowing to the tenant, could be successfully questioned by creditors.

**CONTRACTS:** Forfeiture—Disfavor in Equity. Principle again recognized that forfeitures, while tolerated and enforced, "carry few premiums."

*Appeal from Boone District Court.*—H. E. FRY, Judge.

NOVEMBER 26, 1917.

REHEARING DENIED MARCH 7, 1918.

PROCEEDING in equity involving the propriety of an order to a receiver of an insolvent corporation. The controversy arises between the receiver of the corporation and the owner of the real estate which was occupied as a factory by the corporation. The question presented is whether the certain machinery in said building should be deemed as trade fixtures, and therefore as chattel property, and removable, or whether the same attached as a part of the real estate, and thereby became the property of the owner of the real estate. The decree of the court found the property to be chattel, and removable, and the plaintiff has appealed.—*Affirmed.*

*Whitaker & Snell,* for appellant.

*Goodykoontz & Mahoney,* for appellee.

EVANS, J.—The New-Lite Manufacturing

**1. FIXTURES:**
**trade fixtures:**
**intention:**
**matters bear-**
**ing on inten-**
**tion: landlord**
**and tenant.**

Company is a corporation which formerly operated at Newton, Iowa. It was engaged in the manufacture of certain automobile accessories. At Newton, it occupied rented real estate in two successive locations. It owned its own machinery, including drills, presses, lathes, motors, and other machinery and tools usually incident to a factory working in iron. When it changed its location at Newton, it transferred all its machinery from the former building to the newly rented one. Later, it entered into an arrangement with the Boone Commercial Association whereby it undertook to move its plant to the town of Boone. The Commercial Association donated two lots, for the purpose of erecting a building thereon. These lots were in fact conveyed to the plaintiff, Fehleisen, who undertook to erect a building thereon at a cost of $7,500, which was accordingly done. On March 1, 1915, the plaintiff entered into a contract with the Manufacturing Company to convey said property to it, upon payment therefor in instalments of one hundred dollars per month until the principal sum should be paid, with seven per cent interest. The contract contained a forfeiture clause. At the time the contract was entered into, the building was incomplete, and contained no machinery or fixtures of any kind. About the latter part of May, 1915, the Manufacturing Company shipped its manufacturing plant from Newton to Boone, and installed the same in the new building. It did not pay any instalment of the purchase price. One month later, and on July first, the plaintiff applied for a receiver for the company, on the ground of its insolvency. On August 12th, he served a notice of forfeiture of the land contract, and forfeiture was accordingly suffered. The Manufacturing Company continued in possession, as a recognized tenant, at the same rate of rent as the instalments provided for in the contract, and

paid one month's rent.  Later, the receiver represented to the court that the company was hopelessly insolvent, and asked for authority to sell its personal property for the payment of debts, such personal property consisting of its equipment of machinery and tools which it had installed in the building in question.  This order was resisted by the plaintiff, his claim being that such machinery became affixed to the realty as a part thereof, and that its ownership passed to him by the forfeiture which he declared.  On the other hand, the contention for the receiver is that, under all the facts and circumstances appearing in evidence, the Manufacturing Company was, in every equitable sense, a mere tenant of the property, and not the owner thereof; and that its machinery and tools should be deemed mere trade fixtures, and, therefore, chattel property.  The appellant places special reliance upon our holding in *Ottumwa Woolen Mill Co. v. Hawley,* 44 Iowa 57; while the appellee contends for the application of the rule stated in *Ray v. Young,* 160 Iowa 613.  The underlying principle of both the cited cases is the same.  Property which is attached to buildings, and which would be deemed a part of the realty, as between vendor and vendee, or as between an heir and an administrator, may properly be deemed chattel property as between a landlord and a tenant.  Whether, in a given case, property attached to a building upon real estate should be deemed as a part of the real estate is, in the last analysis, a question of intention.  Such intention is usually implied from all the facts appearing in the case. The manner in which such property may be affixed to the soil or to the building is often an important consideration in determining the intention.  Where an owner of realty affixes thereto fixtures that are appropriate to the use of the property, it is usually deemed consistent with the interests of the owner to treat the same as a part of his realty.  If it be to his interest to so treat it, the implication naturally

arises that he so intended it.   Under the earlier cases, fix-
tures so attached were regarded almost uniformly as a
part of the realty.   Under the later decisions, that rule
has been relaxed, and the question of intention has been
made the criterion of its application.   See *Ottumwa Woot-
en Mill Co. v. Hawley,* 44 Iowa 57; *Ray v. Young,* 160 Iowa
613.

When the improvements under consideration have been
attached to the realty by one not the owner of the realty,
the implication of intention assumes a different color.   This
is so when a tenant, for his own purpose of utilizing the
leased premises, attaches thereto such equipment as seems to
him advantageous to the use of the leasehold by himself.
Here again, the earlier cases held grimly, and with little
reason, that any equipment firmly affixed to the realty by
the tenant became at once a part of the realty, and the
property of the landlord.   See *Carlin v. Ritter,* 68 Md. 478,
and the cases collated therein.   See *Ray v. Young,* 160 Iowa
613.   That doctrine has been quite generally repudiated by
the later cases.   It was repudiated in Maryland by the leg-
islature, following the decision in the case above cited.
It was repudiated in this state in *McCarthy v. Trumacher,*
108 Iowa 284; *Daly v. Simonson,* 126 Iowa 716, 719; *Ray
v. Young,* supra.

As between landlord and tenant, the doctrine of trade
fixtures has been given practically universal recognition,
and is generally applied with much liberality to the pro-
tection of the tenant in the ownership of such fixtures.
Theoretically, this is deemed as tending to encourage trade
and industry.   Manifestly, a tenant would hesitate to incur
large expense in equipping himself with the necessities of
his trade or industry, if the ownership of the equipment
thus acquired is to pass at once, by operation of law, from
him to his landlord.   Nor would the landlord be easily in-
duced to acquire such equipment for the tenant if, by the

operation of the rule referred to, he could acquire the same at the expense of the tenant. In the case of *Ottumwa Woolen Mill Co. v. Hawley*, 44 Iowa 57, Grim, who affixed the equipment to the realty, was the absolute owner of the realty, unencumbered. He therefore owned the equipment, no less as a part of the realty than he would have owned it if it had been deemed chattel. Subsequently, he mortgaged the realty to Hawley, and still later, sold the same to the Ottumwa Woolen Mill Company. The controversy that arose was between the mortgagee and the vendee. The question at issue between them had to be determined, not by the act or interest or intention of either litigant, but by the implied intention of Grim, the common grantor. Grim's intention was fixed as of the time that the fixtures were attached.

The holding was that he intended the equipment to attach to the realty as a part thereof. In *Ray v. Young*, 160 Iowa 613, the question arose as against a tenant who had built the improvement upon the leased property for trade purposes. It was held that the doctrine of trade fixtures applied, and that the tenant was entitled to hold the same as chattel, and to remove the same without injury to the realty.

In its facts, the case on trial appears to occupy a position somewhat midway between the two cited cases. The appellant contends that the Manufacturing Company, which brought its equipment from Newton to Boone, and installed the same in the new building, had become the owner also of the realty, and that it should, for that reason alone, be deemed to have intended the installation as an improvement of the realty, and therefore to become a part thereof. On the other hand, the appellee contends that, in practical effect, the Manufacturing Company was a mere tenant, wholly unable to become an owner, under its executory contract; and that its intention, therefore, should be ascertained

and implied in a court of equity from that point of view. This latter was the view adopted by the trial court. The machinery in question, so far as it was attached at all, was so attached by bolts and nuts, so far as the superstructure was concerned. The attachment to the cement floor was accomplished by drilling of holes for bolt attachments, and the fastening of the same with sulphur cement. The sulphur cement was used in preference to other cement because it was softer, and therefore more pliable, and permitted the removal of the fixtures thus made, with greater facility. If the Manufacturing Company should fairly be deemed practically a tenant, rather than the owner of the property, it seems quite clear to us that the nature of the fixtures was such that they should be deemed chattels and removable. Whether we should deem the Manufacturing Company an owner or tenant, its actual relation to the title of the realty, and the condition which it was in as to solvency, form a very important consideration, as bearing upon the question of its intention. No other fair inference can be drawn from the testimony than that the Manufacturing Company was insolvent when it brought its equipment and installed it in the new building. It was unable to pay any instalment of the purchase price. It installed in such building equipment worth $4,000 or $5,000, according to the invoice. It was already in default in its payment, and subject to forfeiture. Its insolvency was declared by the plaintiff and appellant herein within 30 days, and a forfeiture of the contract within 40 days thereafter. Clearly, it was not to the interest of the Manufacturing Company to attach its equipment to the realty as a part thereof. This is at least one fact that militates against the implied intention to so fix it. We think, also, that some account must be taken of the fact that, because the manufacturing company was insolvent, any act on its part purporting to dispose of all its property with-

2. FRAUDULENT CONVEYANCES: consideration: want of consideration: insolvent tenant attaching fixtures to realty.

out substantial consideration could have been attacked by any creditor as a fraud, either actual or constructive. This fact also militates against the contention of the appellant.

It is to be further considered that the declaration of forfeiture of the contract by the appellant was, in practical effect, a nullification and rescission thereof. The contract was, by its own terms, to become "null and void" in the event of forfeiture. When the appellant cancelled the same, he held his title as before, wholly unaffected by the contract. He holds his title under his original deed. He does not hold it under the Manufacturing Company. When he forfeited the contract, he withdrew his offer to convey. He asserted his absolute title to the property, unaffected by the previous contract. Under the terms of his contract, in the event of failure to pay, the realty was to "revert" to the appellant. If he was entitled at all to take the equipment in question, it could not be by reversion. It must be, if at all, by acquisition from the Manufacturing Company, by reason of some provision of his contract therewith. Courts of equity are slow

3. CONTRACTS: forfeiture: disfavor in equity.

to allow acquisition to be made by a mere declaration of forfeiture. It is a truism that forfeitures are not favored. They are tolerated and enforced, but they carry few premiums. If the appellant had conveyed the property by deed to the Manufacturing Company and had taken a mortgage thereon, and had then foreclosed his mortgage and reacquired the title by execution sale, he would occupy a somewhat different position. He would then be a successor in title to the Manufacturing Company. He is not such now. Whether even that would have required a different result in this case, we are not prepared to express opinion.

The appellant concedes that the Manufacturing Company became his tenant at once upon the declaration of forfeiture, and in effect concedes that any equipment there-

after installed would be governed by the law of trade fixtures. As bearing somewhat upon this, see *Moore v. Smith,* 24 Ill. 512; *Raymond v. White,* 7 Cowen (N. Y.) 319.

We reach the conclusion that the facts in evidence would not justify the finding of an intention by implication or otherwise on the part of the Manufacturing Company, at the time it installed its equipment, to make the same a part of the realty. Taking the case in all its facts, we think no different inference of intention would be implied than would be implied as against a tenant occupying the same realty. The practical interest of the Manufacturing Company was substantially the same as that of a tenant, especially in view of its known insolvency and, therefore, inability to perform its executory contract. This is in accord with the finding of the trial court, and its decree is, therefore,—*Affirmed.*

Preston, C. J., Ladd and Salinger, JJ., concur.