H. M. SPEER, Receiver, Appellee, v. W. PRESTON DONALD et al.,
Appellants.

FIXTURES:   Intent—Movable Farm Structures.   Movable hog houses
and feed bunks on a farm will not constitute fixtures, when to so
declare would be contrary to the actual expressed intent of the
person who placed them on the farm,—a tenant,—and contrary
to the intent as reflected in the nature of the articles, their use,
and the mode of attachment to the realty.   (See Book of Anno.,
Vol. 1, Sec. 10015, Anno. 119 et seq.)

Headnote 1:   26 C. J. pp. 655, 656, 695, 704.

*Appeal from Wayne District Court.*—HOMER A. FULLER, Judge.

MARCH 9, 1926.

ACTION in equity by the purchaser at execution sale of cer-
tain real estate to enjoin the sale under chattel mortgage of
certain articles claimed to be fixtures annexed to the real estate.
From a decree for plaintiff, the mortgagor debtor and the holder
of the chattel mortgage appeal.—*Reversed.*

*D. L. Murrow,* for appellants.

*Evans & Garrett, Steele & Miles,* and *H. B. Bracewell,* for
appellee.

VERMILION, J.—The subject of this controversy is certain
movable hog houses and "feed bunks." The appellee claims
title under and by virtue of a mortgage upon the land upon
which they were situated and used, and the purchase of the
land at execution sale upon foreclosure, while the appellant
McGahey claims under a chattel mortgage specifically describ-
ing the articles. The determination of the question turns upon
whether they are to be regarded as fixtures or chattels.

There is little dispute in the testimony. The hog houses
are of various sizes and shapes, the larger ones being about
eight by twelve feet, and four feet high. They are all con-
structed with runners or skids and attachments for moving
them readily from place to place. The feed bunks, racks for
feeding cattle, are most of them constructed with runners un-

derneath, although a few of them are without. None of the hog houses or feed bunks are, or ever have been, actually attached to permanent buildings or to the soil, save by their own weight. They were all constructed and put upon the farm by the appellant Donald, the mortgagor in both mortgages, at a time when he occupied the farm as a tenant. The hog houses were built at a near-by town and removed to the farm.

Donald later became the owner of the land. He sold or traded it for other land, and thereafter again acquired the title, occupying the land in the meantime as tenant. During all the time from his original occupancy as tenant until appellee took possession of the land, Donald was engaged in the raising of pure-bred cattle and hogs, and the articles in question were used in the prosecution of that business. Hogs were kept in the hog houses, and cattle fed from the feed bunks. They were moved about on the farm from place to place, as convenience or necessity required, except one of the hog. houses, which, although upon runners like the others, was not moved during Donald's occupancy. Some of the hog houses were at times taken to other farms for use, one of which was a mile distant.

The farm in question contained about 240 acres, and was well equipped with buildings suitable to the business, including a hog house 80 feet long, with a driveway through the center, and containing 20 apartments. Donald testified that he did not intend the hog houses in question to become a part of the real estate.

The real estate mortgage under which appellee claims was executed after Donald repurchased the farm, and was to a trustee for Donald's creditors. The trustee also held a chattel mortgage upon certain live stock and personal property, not including the property in controversy. Appellee seems to have first entered into possession of the farm as a trustee under some arrangement between Donald and his creditors, and later, on the commencement of proceedings to foreclose the real estate and chattel mortgages to the trustee, was appointed receiver, and as such took possession of the land and such mortgaged personal property. It does not clearly appear when all of the articles in question were removed from the farm; but, just

before the expiration of the year for redemption from the sale of the land on foreclosure, Donald executed the chattel mortgage under which appellant claims, covering the hog houses and feed bunks, and appellant McGahey removed such of them as were still on the farm.

The line of demarcation between fixtures that pass with a conveyance of real estate and chattels that do not so pass is oftentimes one that it is difficult to draw. The difficulty is not with the rules of law applicable, but with their application.

In *Ottumwa Woolen Mill Co. v. Hawley*, 44 Iowa 57, we quoted approvingly from *Teaff v. Hewitt*, 1 Ohio St. 511, as follows:

"The true criterion of a fixture is the united application of the following requisites: 1. Actual annexation to the realty, or something appurtenant thereto. 2. Application to the use or purpose to which that part of the realty with which it is connected is appropriated. 3. The intention of the party making the annexation to make a permanent accession to the freehold."

We further said:

"The third requisite, being the intention of the party making the annexation to make a permanent accession to the freehold, is to our minds the controlling consideration in determining the whole question. The character of the physical attachment, whether slight or otherwise, and the use, are mainly important in determining the intention of the party making the annexation."

These rules have been repeatedly restated in subsequent decisions: *Johnson v. Mosher*, 82 Iowa 29; *Thomson v. Smith*, 111 Iowa 718; *West v. Farmers' Mut. Ins. Co.*, 117 Iowa 147; *State Sec. Bank v. Hoskins*, 130 Iowa 339; *Rahm v. Domayer*, 137 Iowa 18; *Fehleisen v. Quinn*, 182 Iowa 1283. In *Thomson v. Smith*, supra, we said:

"The character of the annexation and the use, if found, is mainly of importance in determining the intention of defendant in making it. This intention is not the secret purpose of the owner, but that which should be implied from his acts. This is ordinarily to be inferred from the nature of the article, the manner and object of its use, and mode of its annexation."

See, also, *State Sec. Bank v. Hoskins*, supra; *Rahm v. Domayer*, supra; *Fehleisen v. Quinn*, supra; 26 Corpus Juris 655. In *Fehleisen v. Quinn*, supra, we said:

"Whether, in a given case, property attached to a building upon real estate should be deemed as a part of the real estate is, in the last analysis, a question of intention. Such intention is usually implied from all the facts appearing in the case."

In *Rahm v. Domayer*, supra, we approved the rule that articles not otherwise attached to the realty than by their own weight are *prima facie* personalty, and articles affixed to the land, although only slightly, are *prima facie* realty, and that the burden of proof is upon the one contending that the former is realty or the latter is personalty. See, also, 26 Corpus Juris 662.

As between landlord and tenant, where the tenant, for the purpose of utilizing the leased premises, has attached thereto equipment advantageous to such use by himself, the rule has been much more liberally applied in the interest of the tenant. *Ray v. Young*, 160 Iowa 613; *Fehleisen v. Quinn*, supra.

When this record is read in the light of these principles, it it plain, we think, that, when the articles in question were first put upon the farm, no intention is to be imputed to Donald to then make them a part of the realty, in view of their character and use and the fact that he was then but a tenant. Throughout Donald's occupancy of the farm, whether as tenant or owner, the manner of their use remained the same. No question appears to have been raised as to their character at the times of his sale and repurchase. They were not attached to the land, save by their weight, and were designed to be moved from place to place, and some of the hog houses were so moved to other farms controlled by him. They were intended to be used, and were used, in connection with his business of raising cattle and hogs; but, as his operations in the prosecution of that business seem not to have been confined to the farm in question, the use of these articles was limited by the requirements of the business, rather than the boundaries of the farm. It is true that, when Donald surrendered the farm to appellant, many, if not all, of them were left there until the year for redemption was about to expire. Appellants, McGahey and Donald, and

the latter's wife all testified, in substance, that this was in pursuance of a conversation with appellee, in which he said that he made no claim to them, and that they could remain there. Donald testified that appellee said he would be glad to have the hog houses until some of the hogs should be disposed of. Appellee testified that he had no recollection of such a conversation.

Under the authorities, the controlling factor is the intention of Donald, as inferred from the character of the articles in question, the manner and object of their use, and the extent or mode of their annexation to the land. The fact that they were movable, and not permanently attached to the land, is, as we have seen, not alone controlling, but is of importance chiefly in arriving at his intention. The same is true of the manner and purpose of their use. Looking to the character of the articles, the fact that they were designed to be movable, rather than fixed and attached to the land, the purpose and manner of their use, in connection with a business that included the operation of other farms, as distinguished from their use upon this farm only, and other facts appearing in the record, we are of the opinion that no intention on the part of Donald to at any time make them a part of the realty, or to give them the character of fixtures, rather than chattels, is to be inferred.

This is more clearly manifest in respect to the hog houses, some of which were actually used on other farms; but the feed bunks were equally capable of being so used, and counsel seem, and properly enough, we think, to treat them as belonging to the same general class. No different intent in respect to the latter is established. There is nothing in *O'Bryon v. Weatherly,* 201 Iowa 190, inconsistent with the conclusion here reached that appellant McGahey was entitled to hold the hog houses and feed bunks under her chattel mortgage, and was improperly enjoined from selling them thereunder.

The cause is—*Reversed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.