BENTON, Circuit Judge.
Benjamin Matthew Bennett and Teresia Robin Bennett filed for Chapter 13 bankruptcy. Their plan proposed that The Paddock's secured claim in their manufactured home would be bifurcated into secured and unsecured parts. The Paddock objected. The bankruptcy court[1] overruled the objection. It held that 11 U.S.C. § 1322(b)(2) 's anti-modification provision did not apply to The Paddock's claim. In re Bennett , 2017 WL 1417221 (Bankr. N.D. Iowa Apr. 20, 2017). The Paddock appealed. The Bankruptcy Appellate Panel (BAP) affirmed. In re Bennett , 584 B.R. 15 (8th Cir.BAP 2018). The Paddock again appeals. Having jurisdiction under 28 U.S.C. § 158(d)(1), this court affirms.
I.
The Paddock LLC installs, rents, and sells manufactured homes in a planned neighborhood it owns. The Bennetts rented and later purchased a manufactured home, financed by monthly payments to The Paddock. At the time of purchase, they also agreed, for the lot under the home, to a 990-year Ground Lease (99-year terms with 9 renewal options). By the lease, the Bennetts pay a monthly association fee. They pay personal-property taxes for the home; The Paddock pays real-property taxes for the lot.
The Bennetts filed for Chapter 13 bankruptcy. Their plan proposed that The Paddock's claim-secured by a security interest only in their manufactured home-would be treated as partly secured and *679 partly unsecured under 11 U.S.C. § 506(a)(1). The Paddock objected, arguing that an anti-modification provision bars bifurcation because the manufactured home is real property. This provision prohibits a plan from modifying the rights of creditors who have "a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). After an evidentiary hearing, the bankruptcy court found that, under Iowa law, the home was personal-not real-property. The court overruled The Paddock's objection and confirmed the plan. The Paddock appealed to the BAP, which reviewed for clear error and affirmed.
The Paddock appeals, arguing the bankruptcy court erred in finding the manufactured home was personal property under Iowa law.
II.
"In an appeal from the BAP, this court independently reviews the bankruptcy court's decision, applying the same standard of review as the BAP." In re Terry , 687 F.3d 961, 963 (8th Cir. 2012). Factual findings are reviewed for clear error and conclusions of law de novo. Id. This appeal presents a mixed question of law and fact: whether the bankruptcy court's factual findings meet Iowa's legal test for fixtures. Because this question entails primarily factual work, its resolution is reviewed for clear error. See U.S. Bank N.A. v. Village at Lakeridge, LLC , --- U.S. ----, 138 S.Ct. 960, 967, 200 L.Ed.2d 218 (2018).
The Paddock has the burden to prove that its claim is within § 1322(b)(2) 's anti-modification exception. See Educ. Assistance Corp. v. Zellner , 827 F.2d 1222, 1226 (8th Cir. 1987) (creditor objecting to Chapter 13 plan bears initial burden to produce satisfactory evidence supporting its objection). See also In re Jordan , 403 B.R. 339, 351 (Bankr. W.D. Pa. 2009) (collecting cases).
The Paddock's claim is secured by a security interest only in the Bennetts' manufactured home, which is their principal residence. The issue is whether the home is personal or real property. The Bankruptcy Code does not resolve this issue. "In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.' " Nobelman v. Am. Sav. Bank , 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (alteration in original), quoting Butner v. United States , 440 U.S. 48, 54-55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). See In re WEB2B Payment Sols., Inc. , 815 F.3d 400, 405 (8th Cir. 2016) ("The nature and extent of the debtor's interest in property are determined by state law."). Here, the issue is determined by Iowa law. See In re Reinhardt , 563 F.3d 558, 563-64 (6th Cir. 2009) (using state law to determine whether mobile home was personal or real property under § 1322(b)(2) ); In re Ennis , 558 F.3d 343, 345-46 (4th Cir. 2009) (same).
Under Iowa common law, personal property is a fixture-thus real property-when: "(1) it is actually annexed to the realty, or to something appurtenant thereto; (2) it is put to the same use as the realty with which it is connected; and (3) the party making the annexation intends to make a permanent accession to the freehold." Ford v. Venard , 340 N.W.2d 270, 271 (Iowa 1983), citing Cornell College v. Crain , 211 Iowa 1343, 235 N.W. 731, 732 (1931). The first two are "mainly important in determining the intention of the party making the annexation," which is "the controlling *680 consideration in determining the whole question." Speer v. Donald , 201 Iowa 569, 207 N.W. 581, 582 (1926), quoting Ottumwa Woolen Mill Co. v. Hawley , 44 Iowa 57, 63 (1876). "[T]he intention is paramount and really the determining factor." Cornell College , 235 N.W. at 732. A party's intention is a factual question. Speer , 207 N.W. at 582 (intention is "implied from all the facts," quoting Fehleisen v. Quinn , 182 Iowa 1283, 165 N.W. 213, 215 (1917) ). See Langer v. Iowa Beef Packers, Inc. , 420 F.2d 365, 367 & n.4 (8th Cir. 1970) (collecting cases).
The bankruptcy court specifically found that "the method of attachment does not indicate an intent to make the home a permanent accession to the property," and:
The Court finds-especially in light of the fact that Debtors own the home while The Paddock owns the lot and charges Debtors a monthly fee under the lease-that the [Ground Lease] does not clearly establish the intent to make the home a permanent accession to the real estate.
These findings are not clearly erroneous.
The bankruptcy court heard competing testimony about the home's attachment to the ground. Mr. Bennett testified: he had looked behind the skirting that covers the space between the home and ground; the home is placed on pier pads and concrete blocks, not a concrete foundation; and, he has raised a pier pad several times to level the home due to ground sinkage. Sarah Slaymaker-The Paddock's property manager (beginning two years after the home's installation)-testified: there is a full concrete foundation behind the skirting[2] (based on other nearby homes having a concrete foundation); the wheels and axles used to install the home were removed but the underlying structure to which they were attached was probably still there; and, moving the home from its concrete foundation would damage both the home and the lot.
The bankruptcy court found Bennett more credible than Slaymaker because of his first-hand knowledge. The Paddock does not challenge this credibility determination, which there is no reason to disturb. See Dollar v. Smithway Motor Xpress, Inc. , 710 F.3d 798, 806 (8th Cir. 2013) ("A district court's credibility determinations in a bench trial ... are virtually unassailable on appeal."). Bennett's testimony sufficiently supports the bankruptcy court's finding that "the home sits on piers and blocks, not on a concrete foundation."
For the first time in a footnote to its reply brief, The Paddock argues that a federal regulation "renders suspect" the bankruptcy court's finding "that the piers are not deeply embedded into the ground." See 24 C.F.R. § 3285.312(b)(1) (conventional footings for manufactured homes "must be placed below the frost line depth for the site ...."). This court generally does not consider arguments raised for the first time in a reply brief. Cutcliff v. Reuter , 791 F.3d 875, 883 n.3 (8th Cir. 2015). Even if this court considered the argument, the factual record supports the bankruptcy court's finding that "the home is more like a structure on blocks than a structure deeply embedded into the ground." The court found that the home does not have a foundation. Bennett testified that one pier pad repeatedly sunk into the ground. The Paddock did not present any evidence about the piers being deeply embedded. Its reliance on a federal regulation is irrelevant. The bankruptcy court's structure-on-blocks *681 finding was not clearly erroneous.
The Paddock also challenges the bankruptcy court's finding that the home "could be removed from the property and would not lose substantial value if it was removed." However, this finding is supported by the finding that the home is like a structure on blocks, and by Slaymaker's testimony that the underlying structure used to transport it was probably still there. No direct evidence shows that removing the home would be damaging. Slaymaker's testimony about damage was based on her (uncredited) assumption that the home was attached to a concrete foundation.[3] The photos in evidence, discussed during Slaymaker's testimony, do not show how the home is attached to the ground or what is required to move it. The bankruptcy court's no-loss-from-removal finding was not clearly erroneous, as this court is not "left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City , 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), quoting United States v. U.S. Gypsum Co. , 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). See In re Hixon , 387 F.3d 695, 700 (8th Cir. 2004) ("[E]ven greater deference to the bankruptcy court's factual findings is necessary where ... the findings call for an assessment of witness credibility and where the record contains no contradictory documents or objective evidence.").
Based on the factual findings-the manufactured home sits on piers and blocks, is more like a structure on blocks than one deeply embedded in the ground, and can be removed without losing substantial value-the bankruptcy court's conclusion that "the method of attachment does not indicate an intent to make the home a permanent accession to the property" is not clearly erroneous. Compare Durband v. Noble , 182 Iowa 1271, 166 N.W. 581, 581 (1918) (buildings were not fixtures where they were "placed upon posts and blocked up," and could be removed without "difficulty" or "injury to the premises"), with Ford , 340 N.W.2d at 272 (mobile home was a fixture where party making the accession "substantially modified" it, and "[i]t could not be removed from its present location except in the sense that any permanent home could be"), and Peoria Stone & Marble Works v. Sinclair , 146 Iowa 56, 124 N.W. 772, 772-73 (1910) (building was real property where it rested on "stone and brick pillars deeply imbedded in the soil").
The Paddock argues the Ground Lease shows its intent to make the home a permanent accession. The lease says that the home is "permanently affixed," has "permanent footings," and will "be installed as a permanent improvement and fixture." However, as The Paddock admits, the lease also permits the home's removal from the property. Before the Bennetts' loan is paid or refinanced, the lease requires The Paddock's permission to remove the home. If the loan is paid, title to the home passes to the Bennetts by a bill of sale and they may remove it. The Paddock (and dissent) emphasize that the 990-year lease term shows an intent to treat the home as a fixture. But, the lease makes clear that The Paddock continues to own the lot, and allows termination on 60-days' notice. The bankruptcy court's view *682 of the evidence, that the Ground Lease does not establish an intent to make the home a permanent accession, is permissible, and not clearly erroneous. See Anderson , 470 U.S. at 574, 105 S.Ct. 1504 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").
The bankruptcy court's findings distinguish this case from In re Green , 436 B.R. 91 (Bankr. S.D. Ill. 2010). There, a mobile home was held to be a fixture under a test like Iowa's. See In re Green , 436 B.R. at 98. That bankruptcy court found significant that the debtor "testified that, at the time he signed the mortgage [for the mobile home and underlying land], he intended to permanently affix the mobile home to the real estate." Id. Here, the bankruptcy court, based on credibility determinations, found nothing in the record showed The Paddock's intent to make the manufactured home a fixture.[4]
The bankruptcy court's finding-the Bennetts' home did not meet Iowa's fixture test and is thus not real property-is not clearly erroneous.
* * * * * * *
The judgment is affirmed.

The Honorable Thad J. Collins, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

The parties agree the skirting is not concrete. Slaymaker testified that it "looks like plastic." Bennett testified that it was "[a] faux-fake veneer skirting."

The dissent relies on this (uncredited) testimony to conclude that the home has a concrete foundation and its removal would cause difficulty or destruction. Slaymaker's testimony was not uncontroverted. Bennett repeatedly testified that the home was not sitting on a concrete foundation. The bankruptcy court explicitly found, after weighing the competing testimony and making a credibility determination, that the foundation Slaymaker described (and said would be damaged) was not there.

The Paddock criticizes the bankruptcy court for relying on In re Coleman , 392 B.R. 767 (8th Cir.BAP 2008). That Missouri case is not persuasive here. Missouri follows a statute, not common law, to determine whether a manufactured home is personal or real property. See In re Estate of Parker , 25 S.W.3d 611, 616 (Mo. App. 2000) (holding § 700.111 RSMo abrogated Missouri's "common law elements of conversion of a mobile home to real property"). Regardless, Missouri's statute is not similar to Iowa's common law of fixtures. Compare Coleman , 392 B.R. at 772-73, applying § 700.111 RSMo 2005, with Ford , 340 N.W.2d at 271-73. In any event, this court "may affirm the bankruptcy court on any ground supported by the record." In re Acceptance Ins. Cos. , 567 F.3d 369, 376 (8th Cir. 2009).